Fee Paid                                                                         29

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

**MARK W. DOBRONSKI,**
an individual,

                Plaintiff,

v.

**WINRED, INC.,**
a Delaware non-stock corporation; and,

**WINRED TECHNICAL SERVICES,**
**LLC,** a Delaware limited liability company,

                Defendants.

Case: 2:24-cv-12513
Assigned To : Murphy, Stephen J., III
Referral Judge: Ivy, Curtis, Jr
Assign. Date : 9/25/2024
Description: CMP DOBRONSKI V.
WINRED, INC ET AL (EV)

---

## **COMPLAINT**

NOW COMES the Plaintiff, MARK W. DOBRONSKI, appearing *in propria persona*, and for his complaint against the Defendants alleges:

1. This matter arises under the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227, *et seq.*

### Parties

2. Plaintiff, MARK W. DOBRONSKI, is an individual, of the age of majority, a citizen of the United States of America, is domiciled and has a place of business in Orange County, Florida, has a residence and place of business in Washtenaw County, Michigan, and has a place of business in Wayne County, Michigan.

3. Defendant WINRED, INC. ("PAC"), is a non-stock corporation organized and existing under the laws of the State of Delaware, with its principal office located at 4250 Fairfax Drive, Suite 600, Arlington, Virginia 22203-1665.

4. PAC is registered as a political action committee with the United States Federal Election Commission ("FEC").

5. Defendant WINRED TECHNICAL SERVICES, INC. ("WINRED") is a limited liability company organized and existing under the laws of the State of Delaware, with its principal office located at 4250 Fairfax Drive, Suite 600, Arlington, Virginia 22203-1665.

6. The trademark "WINRED" is registered with the United States Patent and Trademark Office ("USPTO"), serial number 88322530, registration number 6000101, and is owned by WINRED. *See* EXHIBIT 1, attached hereto.

7. Pursuant to the trademark application filed by WINRED with the USPTO, WINRED represents that it, *inter alia*: provides political fundraising services for others via a global computer network, software as a service services featuring software for creating websites for political fundraising, managing political fundraisers, making and receiving political donations, allocating political donations to marketing or consulting agencies of subcontractors, communicating with and managing political donors, promoting and selling tickets and sponsorships for political events, promotion and

selling merchandise, and creating and managing online petitions. *Id.*

## Jurisdiction

8. This Court has jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. § 1331.

9. This Court has limited personal jurisdiction over Defendants PAC and WINRED, pursuant to M.C.L. § 600.715, as a result of the defendants transacting any business within the state; and/or doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort.

## Venue

10. Venue is proper in this Court, pursuant to 28 U.S.C. § 1391(b)(2), as the tortious or illegal telephone calls complained of herein were received by Plaintiff in this judicial district.

## Preliminary Statement

11. As the Supreme Court recently explained, "Americans passionately disagree amount many things.  But they are largely united in their disdain for robocalls." *Barr v. American Association of Political Consultants LLC*, 140 S. Ct. 2335, 2343 (2020).

12. The Federal Government receives a staggering number of complaints about robocalls – 3.7 million complaints in 2019 alone. *Id.*

13. In response to widespread public outrage over intrusive telemarketing calls

to homes and businesses, the United States Congress acted to prevent persons, like Defendant, from invading American citizen's privacy and to prevent abusive "robo-calls" by enacting the TCPA.

14. According to the Federal Communications Commission ("FCC"), "Unwanted calls and texts are the number one complaint to the FCC."

15. In regard to such telephone solicitations, Senator Hollings of South Carolina, the primary sponsor of the TCPA, explained, "computerized calls are the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall... these computerized telephone calls threaten our personal safety... These machines are out of control, and their use is growing by 30 percent every year. It is telephone terrorism, and it has got to stop...." See *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 17 FCC Rcd. 17459, 17474, fn. 90 (2002), quoting 137 Cong. Rec. 30,821-30,822 (Nov. 7, 1991).

16. According to YouMail, Inc., a company which tracks robocall activity and publishes the YouMail Robocall Index, during calendar year 2022 alone, American consumers were bombarded with over 55.05 *billion* robocalls; an average of over 165 robocalls to each man, woman, and child. [Source: www.robocallindex.com ].

17. Nearly 1 in 3 Americans say they have fallen victim to a phone scam in the past year, with reported losses to phone scams exceeding $29.8 Billion. [Source: www.cndb.com/2021/06/29/americans-list-billions-of-dollars-to-phone-scams-over-the-past-year.html ].

18. Congress has found that interstate telemarketing fraud has become a problem of such magnitude that the resources of the Government are not sufficient to ensure adequate consumer protection from such fraud.

19. As a result, in enacting the TCPA, Congress intentionally created a legally enforceable bounty system, not unlike *qui tam* statutes, to incentivize the assistance of aggrieved private citizens to act as "private attorneys general" in enforcing federal law.

Telephone Consumer Protection Act

20. In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and invasion of privacy to consumers specifically, but were also a threat to interstate commence generally. *See* S. Rep. No. 102-178, at 2-3, 1991 U.S.C.C.A.N. 1968, 1969-71, 1991 WL 211220 (1991).

21. The TCPA imposes restrictions on the use of automated telephone equipment. 47 U.S.C. § 227(b)(1).

22. Pursuant to authority delegated by Congress to the FCC under the TCPA at

47 U.S.C. § 227(b)(2), the FCC has adopted regulations to implement the aforesaid restrictions on use of automated telephone equipment. The TCPA implementing regulations are promulgated at 47 C.F.R. § 64.1200(a), *et seq.*

23. As part of the restrictions on use of automated telephone equipment, Congress created a private right of action for aggrieved persons to received $500.00 in damages for *each* violation of the subsection of the statute or the regulations prescribed thereunder, which amount the court may treble if the court finds that the defendant willfully or knowingly violated the statute or the regulations. 47 U.S.C. § 227(b)(3).

24. Additionally, the Congress also sought to protect subscriber privacy rights, and directed the FCC to initiate a rulemaking proceeding to compare and evaluate alternative methods and procedures, and to develop proposed regulations to implement the methods and procedures that the FCC determines are most efficient to accomplish the need to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 C.F.R. § 227(c)(1). The FCC conducted such a rulemaking and implemented regulations to protect telephone subscribers' privacy rights. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 68 FR 44144, 2003 WL 21713245 (FCC, 2003).

25. As part of the protection of subscriber privacy rights, Congress created a

private right of action for aggrieved persons to receive $500.00 in damages for *each* violation of the subsection of the statute or the regulations prescribed thereunder, which amount the court may treble if the court finds that the defendant willfully or knowingly violated the statute or the regulations. 47 U.S.C. § 227(c)(5).

General Allegations

26.  Plaintiff's residential and cellular telephone lines have been besieged with telemarketing calls hawking such things as alarm systems, Google listings, automobile warranties, health insurance, life insurance, credit cards, and even financial miracles from God.  Some calls are blatant scams, including calls purportedly from the Social Security Administration, the U.S. Drug Enforcement Administration, and other government agencies, claiming that arrest warrants have been issued against Plaintiff for alleged drug trafficking and money laundering activities.

27.  Plaintiff's cellular telephone number is 734-***-9671.

28.  Plaintiff's cellular telephone number 734-***-9671 is listed on the National Do Not Call Registry maintained by the United States Federal Trade Commission pursuant to 16 C.F.R. Part 310 and has been so listed continuously since at least December 9, 2004 and at all times subsequent thereto and relevant hereto.

29.  Plaintiff uses his cellular telephone primarily for personal, family, and household communications, and not for business purposes.

30. By listing his cellular telephone number on the National Do Not Call Registry, Plaintiff has given constructive notice to the World, including each and every one of the Defendants, that Plaintiff does not wish to receive telephone solicitations or robocalls at his cellular telephone number.

31. Courts are legally bound to give great deference to the FCC's interpretations of the TCPA and its own regulations.

32. The FCC has issued a declaratory ruling defining "called party" as "the subscriber, i.e., the consumer assigned the telephone number dialed and billed for the call, or the non-subscriber customary user of a telephone number included in a family or business calling plan." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02–278, WC Docket No. 07–135, FCC 15–72, 2015 WL 4387780, at *26, ¶ 73 (FCC, 2015).

33. Plaintiff is the subscriber to and a customary user of the called telephone line, is the one that was the actual recipient of the telephone calls at issue in this complaint, and suffered the nuisance and invasion of privacy of same. Thus, Plaintiff has standing to bring this action for alleged violations of TCPA's robocall provisions. See *Leyse v. Bank of America National Association*, 804 F.3d 316, 324 (3rd Cir. 2015).

34. The FCC has ruled that wireless subscribers who ask to be put on the national do-not-call list are presumed to be "residential subscribers." *In re Rules and*

*Regulations Implementing the TCPA*, 18 FCC Rcd. 14014, 14039, 2003 WL 21517853, at *14, ¶ 36 (FCC, 2003).

35.  A text message to a cellular telephone qualifies as a "call" within the compass of the TCPA. *Campbell-Ewald Co. v. Gomez*, 136 S.Ct. 663, 667, 577 U.S. 153, 156 (2016).

36.  At no time relevant hereto has Plaintiff or any other authorized person requested, consented, permitted, or authorized the contact from the Defendants.

37.  At no time has Plaintiff provided permission to the Defendants to engage in telephone solicitation with the Plaintiff via telephone.

38.  Pursuant to 47 U.S.C. § 217, the act, omission, or failure of any officer, agent, or other person acting for or employed by an common carrier or user, acting within the scope of his employment, shall in every case also be deemed to be the act, omission, or failure of such carrier or user as well as that of the person.

39.  At no time has Plaintiff provided "prior express consent" or "prior express written consent" (as those terms are defined under the TCPA and as interpreted by the FCC) for any of the Defendants or anyone acting on behalf of the Defendants to initiate any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to Plaintiff's residential telephone number.

40.  At no time has Plaintiff had an "established business relationship" (as that term is defined under the TCPA and as interpreted by the FCC) with any of the Defendants.

41.  The TCPA and the Commission's rules plainly require *express* consent, not implied or "presumed" consent. *In re Rules and Regulations Implementing the TCPA*, 30 FCC Rcd. 7961, 7991, 2015 WL 4387780, at *20, ¶ 52 (FCC, 2015) [Emphasis as in original.]

42. The FCC has declared that "[p]urporting to obtain consent during the call... does not constitute the *prior* consent necessary to deliver the message in the first place as the request... is part of the telemarketing." *In re Rules and Regulations Implementing the TCPA*, 18 FCC Rcd. 14014, 14019, 2003 WL 21517853, at *49, ¶ 142 (FCC, 2003) [Emphasis as in original.]

43.  The FCC has clarified that sellers may be held vicariously liable for violations of the TCPA by third-party telemarketers that initiate calls to market the seller's products or services, declaring as follows:

> "[A] company on whose behalf a telephone solicitation is made bears the responsibility for any violation of our telemarketing rules and calls placed by a third party on behalf of that company are treated as if the company itself placed the call."

*In re Rules and Regulations Implementing the TCPA*, 20 FCC Rcd. 13664, 13667,

2005 WL 1981564, at *3, ¶ 7 (FCC, 2005).

44. A seller may be liable for violations by its representatives under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification. *In re Dish Network,* 28 FCC Rcd. 6574, 6584, 2013 WL 1934349, at *9, ¶ 28 (FCC, 2013).

45. When considering individual corporate officer liability, other Courts have agreed that a corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *See, e.g., Jackson Five Star Catering, Inc. v. Beason,* No. 10-10010, 2013 WL 5966340, at *4 (E.D. Mich., Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participating in or personally authorized the conduct found to have violated the statute.") (internal citation omitted); *Maryland v. Universal Elections,* 787 F. Supp. 2d 408, 415-16 (D.MD., 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

46. It is well settled under Michigan law that corporate employees and officials are personally liable for all tortious and criminal acts in which they participate, regardless of whether they are acting on their own behalf or on behalf of a corporation. A corporate officer or director is, in general, personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an

agent for the corporation and not on his own behalf.

47. Parties are acting in concert when they act in accordance with an agreement to cooperate in a particular line of conduct or to accomplish a particular result. The agreement need not be expressed in words or may be implied and understood to exist from the conduct itself. Whenever two or more persons commit tortious acts in concert, each become subject to liability for the acts of the others, as well as for his own acts. In either case, the defendant's embrace of the actor's purpose or design—whether by agreement or by action—renders the defendant liable for the underlying tort.

48. The liability of coconspirators to civil damages is joint and several. All those who, in pursuance of a common plan to commit a tortious act actively take part in it and further it by cooperation or request, or who lend aid or encouragement to the wrongdoer, or who ratify and adopt the acts done for their benefit, are equally liable with him.

49. For each and every call alleged herein initiated to Plaintiff's telephone line, Plaintiff suffered the injury of invasion of privacy and intrusion on Plaintiff's right of seclusion.

50. For each and every call alleged herein initiated to Plaintiff's telephone line, Plaintiff suffered the injury of the occupation of the telephone line by unwelcome calls, making the phone unavailable for legitimate callers or outgoing calls, including

emergency calls, when the telephone line was seized by Defendants' calls.

51. For each and every call alleged herein initiated to Plaintiff's telephone line, Defendants caused an injury in the form of a nuisance and annoyance to the Plaintiff. For calls that were answered, Plaintiff had to go to the unnecessary trouble of answering them. Even for unanswered calls, Plaintiff had to deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features on Plaintiff's telephone, which features are designed to inform the user of important missed communications.

52. Each and every call placed without consent by Defendants alleged herein to Plaintiff's telephone lines resulted in the injury of a trespass to Plaintiff's chattel, namely Plaintiff's telephone line and its telephone services.

53. For purposes of the TCPA, the FCC has defined "willfully or knowingly" to mean that the violator knew that he was doing the act in question, in this case, initiating a telephone solicitation, irrespective of any intent to violate the law. A violator need not know that his action or inaction constitutes a violation; ignorance of the law is not a defense or mitigating circumstance.

<u>The Scheme</u>

54. Defendants are engaged in providing political fundraising services for others via a global computer network.

55. Defendants offer a "one stop shop" of bundled or packaged services to assist candidates for public office with fundraising activities.

56. The bundled packages rely upon telemarketing via text messaging as a cost effective and efficient method of seeking out consumers across the United States to contribute to the various political campaigns.

57. Generally, federal law prohibits contributions by corporations to political campaigns. *See* 52 U.S.C. § 30118.

58. Because of federal laws relating to campaign financing, Defendants have created a bifurcated corporate process: one corporation – WINRED – to be the bundled service provider or facilitator, and a second corporation – PAC – to be the "trustee" to receive the funds received and to promptly disburse the funds to the political candidates or campaign committees that the funds were solicited for.

59. It is difficult to parse PAC from WINRED, as they both have the word "Winred" in their names (with the mark "Winred" being registered to and owned by WINRED), they both share the same principal office address, they both share the same President, they both share common employees, and they both exist to participate in and facilitate the same scheme, including having designed the scheme and providing the necessary components as a bundled package to their client political candidates and committees and then overseeing the process.

60. Defendants either directly, or through contracted third-party telemarketers. initiate telephone calls *en masse* using automated telephone dialing systems, which have the capacity to store or produce telephone numbers to be called using a random or sequential number generator to dial such numbers, to solicit consumers to contribute to Defendants' clients' political campaigns.

61. Defendants' marketing scheme involves the use of text messages sent to registered voters' cellular telephones soliciting contributions for Defendants' client political candidates or committees. The text messages include a "link" that allows the solicited consumer to make a online contribution by credit card to the designated political candidate or committee.

62. Defendants have boasted that, during their first 18 months of operation, Defendants' marketing scheme was responsible for over $2 Billion flowing through PAC's bank accounts and into the coffers of WINRED's client political candidates and committees. For every dollar which WINRED facilitates delivery to a political candidate or committee, WINRED receives a commission – the lowest level being 3 percent – as compensation for its services. Thus, it follows that, during its first 18 months of operation, WINRED received over $60 Million in compensation for its bundled services provided to political candidates and committees.

63. In response to consumer complaints, Attorneys General in Connecticut,

Maryland, Minnesota, and New York have undertaken investigation and scrutiny of PAC's political campaign fundraising practices. The United States Circuit Court of Appeals for the 8th Circuit ruled against PAC in its effort to block subpoenas from Minnesota Attorney General Keith Ellison's office in an investigation into whether PAC's donation processing website violated the state's consumer protection law.

64. The automated telephone dialing systems being utilized by Defendants have the capacity to use a random or sequential number generator to either store or produce phone numbers to be called; the autodialer uses the number generator to determine the order in which to pick phone numbers from a pre-produced list and store those numbers to be dialed at a later time.

65. Upon pressing the link appearing in each text message, the telephone user is then redirected to an Internet web page seeking a donation to a political candidate or committee, or the purchase of a product from the political candidate or committee, and always at the end include the disclosure "Paid for by WINRED.

66. Defendants involvement in the overall scheme includes directing, controlling, and participating at every step in the marketing scheme. Further, Defendants ratify the scheme by taking their commissions and service fees from the client political candidates and committees relative to the campaign contributions generated as a result of the scheme.

## The Calls

67.  On each of the below indicated dates and times, Defendants initiated or caused to be initiated text message calls to Plaintiff's cellular telephone number 734-***-9671 from the caller identification numbers indicated, which text messages provided the respectively referenced link.

| CALL | DATE | TIME | CALLER ID | LINK |
|---|---|---|---|---|
| 1 | 2/26/2024 | 12:41 PM | 571-250-0135 | rwing.us/zaqLoU |
| 2 | 2/28/2024 | 12:37 PM | 346-476-0450 | rwing.us/2A2qx8 |
| 3 | 3/9/2024 | 12:23 PM | 949-849-0365 | 2024win.org/r.wr?id=10r0CERy |
| 4 | 3/16/2024 | 12:32 PM | 504-579-8815 | rwing.us/5qOEXp |
| 5 | 3/30/2024 | 12:46 PM | 681-248-1736 | red24.us/2eh6of |
| 6 | 4/2/2024 | 7:52 PM | 734-391-1963 | facts37.com/r.wr?id=05RUCluQ |
| 7 | 4/3/2024 | 6:06 PM | 775-367-7146 | rtwing.us/2t7yLq |
| 8 | 4/3/2024 | 2:44 PM | 504-298-9925 | rwing.us2VyfJM |
| 9 | 4/5/2024 | 10:15 PM | 860-400-2464 | red24.us/2bvj2S |
| 10 | 4/6/2024 | 11:31 AM | 571-445-6977 | rwing.us/5RpUNP |
| 11 | 4/8/2024 | 5:46 PM | 207-816-3292 | 482facts.com/r/uxjiv5LnG9IP |
| 12 | 4/8/2024 | 2:28 PM | 857-285-4492 | ourusa.co/31uYr8 |
| 13 | 4/10/2024 | 5:52 PM | 623-552-3603 | red24.us/4sXIq4 |
| 14 | 4/12/2024 | 3:03 PM | 571-636-9659 | gopway1.com/2x3mTv |
| 15 | 4/14/2024 | 12:39 PM | 571-445-6589 | rwing.us/27NMfv |
| 16 | 4/15/2024 | 3:02 PM | 571-831-0587 | 24give.us/04923N |
| 17 | 4/16/2024 | 11:40 AM | 202-796-3750 | 24give.us4wiXII |
| 18 | 4/21/2024 | 10:44 AM | 571-445-6989 | 24give.us/zsA7AT |
| 19 | 4/23/2024 | 1:05 PM | 571-479-6506 | 24give.us/20aIsk |
| 20 | 4/26/2024 | 10:51 AM | 412-239-9703 | 24act.us/0F1GQw |
| 21 | 5/15/2024 | 10:35 AM | 952-295-9431 | red24.us/zHw32G |
| 22 | 5/17/2024 | 12:51 PM | 571-479-6756 | a-ction.us/3xKBHT |
| 23 | 5/28/2024 | 2:46 PM | 202-894-8245 | gopway1.com/zsZ3Uq |
| 24 | 5/29/2024 | 10:35 AM | 234-335-0053 | clkgo.co/chpMP |
| 25 | 5/31/2024 | 8:35 AM | 571-445-6818 | red24.us/3Y3tos |
| 26 | 6/3/2024 | 5:15 PM | 518-309-0553 | facts-34.com/4UvSOS |
| 27 | 6/3/2024 | 5:22 PM | 470-754-0212 | red24.us/4ZcPDS |
| 28 | 6/9/2024 | 3:06 PM | 470-229-3378 | red24.us/4UsM7o |
| 29 | 6/15/2024 | 11:27 AM | 346-615-2308 | red24.us/3sDYId |
| 31 | 6/19/2024 | 12:43 PM | 202-644-7329 | nolib.us/4I3tHP |
| 32 | 6/20/2024 | 11:18 AM | 571-473-0252 | rncgive.com/r.wr?id=V9xNdQM7 |

| 33 | 6/22/2024 | 12:06 PM | 667-458-4016 | red24.us/51YZlt |
| 34 | 6/25/2024 | 10:49 AM | 757-731-7629 | red24.us/5g4miO |
| 35 | 6/28/2024 | 10:49 AM | 757-731-7629 | red24.us/ |
| 36 | 6/29/2024 | 1:54 PM | 623-227-4351 | facts-34.com/2bZaIR |
| 37 | 6/30/2024 | 12:24 PM | 202-656-4138 | facts254.cc/r/Vq0RLDSAOinN |
| 38 | 7/15/2024 | 10:25 AM | 771-777-8806 | 24win.co/3IgT8c |
| 39 | 7/17/2024 | 2:19 PM | 571-240-7106 | red24.us/2RsQDi |
| 40 | 7/20/2024 | 5:39 PM | 571-463-0679 | gopway1.com/27YPDH |
| 41 | 7/24/2024 | 11:28 AM | 571-569-2825 | 24act.us/3yBrP9 |
| 42 | 7/28/2024 | 4:53 PM | 346-347-1283 | vote24.us/6OFuPy |
| 43 | 7/29/2024 | 5:11 PM | 571-495-8970 | gopway1.com/5BonAr |
| 44 | 7/30/2024 | 12:10 PM | 814-996-0056 | 1-gop.us/4ovZld |
| 45 | 7/30/2024 | 4:29 PM | 202-972-9275 | facts16.co/r.wr?id=BEpGIZuj |
| 46 | 7/31/2024 | 10:15 AM | 202-750-5019 | facts273.cc/r/gnV5Cd6R9L2H |
| 47 | 7/31/2024 | 12:18 PM | 816-648-7143 | nolib.us/3KCffY |
| 49 | 8/1/2024 | 4:41 PM | 346-347-1319 | usred.co/zouYcC |
| 49 | 8/2/2024 | 1:16 PM | 814-996-0162 | redvote.co/5yJDJ3 |
| 50 | 8/5/2024 | 11:44 AM | 571-584-1883 | gopway1.com/53ym62 |
| 51 | 8/6/2024 | 3:17 PM | 612-843-4990 | 24-red.com/skkki2 |
| 52 | 8/7/2024 | 9:40 AM | 602-899-9446 | facts-34.com/2NyAHw |
| 53 | 8/7/2024 | 12:23 PM | 814-996-0042 | upred.com/6EcSsq |
| 54 | 8/7/2024 | 12:43 PM | 571-831-0405 | win-gop.co/1vdysj |
| 55 | 8/8/2024 | 12:53 PM | 814-996-0041 | usred.com/2Ilis7 |
| 56 | 8/8/2024 | 8:42 PM | 571-463-0657 | gopway1.com/25TbXK |
| 57 | 8/11/2024 | 10:40 AM | 504-429-5780 | give-1.net/z7xvmH |
| 58 | 8/20/2024 | 3:09 PM | 617-454-4296 | facts-34.com/5auoxu |
| 60 | 8/21/2024 | 2:19 PM | 202-970-2655 | 2024win.org/r.wr?id=CDcKfPAm |
| 61 | 8/23/2024 | 3:41 PM | 469-701-3701 | give-1.net/2HOasT |
| 62 | 9/1/2024 | 1:55 PM | 571-495-8941 | gopway1.com/3ICE28 |
| 63 | 9/7/2024 | 2:34 PM | 571-390-6358 | gop-win.co/10muuc |
| 64 | 9/8/2024 | 12:28 PM | 832-240-9469 | gopway1.com/50es9g |
| 65 | 9/10/2024 | 3:53 PM | 205-793-9006 | 24win.co/4mfJup |
| 66 | 9/10/2024 | 10:54 PM | 202-915-8675 | amrca.co/dtnyre |
| 67 | 9/12/2024 | 11:46 AM | 504-249-8158 | 24pat.co/26w1Hl |
| 68 | 9/13/2024 | 3:08 PM | 202-984-1594 | mega-maga.co/9rhso0 |
| 69 | 9/14/2024 | 3:06 PM | 667-307-2795 | 24win.co/27SiK3 |
| 71 | 9/14/2024 | 2:03 PM | 385-530-0135 | 24-red.com/vwkd8w |
| 72 | 9/16/2024 | 7:53 PM | 520-534-1697 | 24-red.com/z5nvsr |
| 73 | 9/17/2024 | 3:38 PM | 928-851-7593 | facts344.cc/MuVFok |
| 74 | 9/18/2024 | 4:06 PM | 771-888-2678 | gop-way.com/82wto7 |
| 75 | 9/18/2024 | 6:28 PM | 434-352-1134 | us-win.com/nvIo8s |
| 76 | 9/18/2024 | 9:02 PM | 434-290-3924 | 24blitz.co/map9xg |
| 77 | 9/19/2024 | 10:39 AM | 434-290-3524 | 24blitz.co/4uimje |

| 78 | 9/19/2024 | 12:29 PM | 857-220-8370 | facts-34.com/6LJ9pA |
| 79 | 9/20/2024 | 11:56 AM | 571-899-3762 | gift24.co/p48b88 |
| 80 | 9/21/2024 | 2:28 PM | 571-569-2863 | 24win.co/09JKeA |
| 81 | 9/22/2024 | 11:44 AM | 771-215-5796 | 24pat.co/2ZD96J |
| 82 | 9/22/2024 | 4:44 PM | 571-240-1964 | 24win.co/5pcXJT |

68. Defendants initiated or caused to be initiated additional unwanted text message calls prior to February 26, 2024, the dates and times which are well within Defendants' knowledge and will be unveiled during discovery, but which text message calls Plaintiff had inadvertently deleted from his cell phone. After discovery, Plaintiff will amend this Complaint to include those additionally identified text message calls.

69. Plaintiff sent "STOP" messages in response to many of the messages received received prior to February 26, 2024, and including immediately after receiving Calls 1, 3, 6, 7, 26, 37, 51, 58, 69, 73, and 74, *supra*.

70. On many occasions, Plaintiff dialed the caller identification numbers displayed during the text message calls to make a verbal "do not call" demand, but those attempts were to no avail as the dialed numbers were either disconnected or merely rang and were not answered.

71. The use of an automatic telephone dialing system to send the text messages is evident from the generic and impersonal nature of the text messages and the use of a link in each message.

72. The use of an automatic telephone dialing system to send the text messages is also evident by virtue of the fact that, when Plaintiff send a "STOP" message in

response to a received text message, a nearly instantaneous response of "You have successfully unsubscribed" is received.

## FIRST CAUSE OF ACTION
## VIOLATION OF THE TCPA - AUTODIALER CALL

73. Plaintiff incorporates the allegations of paragraphs 1 through 72, *supra.*

74. Each of Calls 1 through 82, *supra*, were in violation of the TCPA, specifically 47 U.S.C. § 227(b)(1)(A)(iii) and 47 C.F.R. § 64.1200(a)(1)(iii), as Defendants initiated or caused to be initiated a telephone call to a telephone number assigned to a cellular telephone service, without the prior express consent of the called party and there being no emergency purpose, using an automatic telephone dialing system.

75. The aforesaid violations of the TCPA were willful and/or knowing as is evidenced by repetitive number of calls.

76. Further, both Defendants are well aware of the requirements under the TCPA as both Defendants have been previously haled into federal district courts for similar violations under the TCPA.

## SECOND CAUSE OF ACTION
## VIOLATION OF THE TCPA - DO NOT CALL

77. Plaintiff incorporates the allegations of paragraphs 1 through 82, *supra*.

78. Following is a screen shot of the text message received during Call 14.



79. Call 14, *supra*, constituted a telephone solicitation as the call encouraged the purchase of goods, to wit: a coffee mug.

80. Call 14, *supra*, was in violation of the TCPA, specifically 47 C.F.R. § 64.1200(c)(2), as Defendants initiated or caused to be initiated a telephone solicitation to a residential telephone subscriber who has registered his telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations; or, alternatively, 47 C.F.R. § 64.1200(d)(3) and/or (6) for failing to honor Plaintiff's express do-not-call requests.

81. The aforesaid violation of the TCPA was willful and/or knowing.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, the aforesaid premises considered, Plaintiff prays that this Court enter a judgment for Plaintiff and against the Defendants, jointly and severally, as

follows:

    A.    Damages for violations of the TCPA alleged:

- First Cause of Action: 82 violations

- Second Cause of Action: 1 violation

A total of 83 violations at $500.00 per violation, for damages of $41,500.00, which amount shall be trebled because the violations were willful and/or knowing, for total damages of $124,500.00. The cumulative total amount of damages claimed in this action is $124,500.00, and in the event of default judgment is the sum certain damages amount that will be sought.

B. An award of Plaintiff's taxable costs and disbursements incurred in the filing and prosecution of this action;

C. An injunction enjoining Defendants from initiating any telephone calls to Plaintiff's residential telephone and cellular telephone lines.

D. Interest accruing from the date of filing until paid at the statutory rate; and,

E. Such other and further relief as this Court deems necessary, reasonable, prudent and proper under the circumstances.

Respectfully submitted,

Dated: September 23, 2024

Mark W. Dobronski
Post Office Box 99
Dexter, Michigan 48130-0099
Telephone: (734) 641-2300
Email: markdobronski@yahoo.com
Plaintiff *In Propria Persona*

# EXHIBIT 1

For assistance with TSDR, email teas@uspto.gov and include your serial number, the document you are looking for, and a screenshot of any error messages you have received.

| STATUS | DOCUMENTS | MAINTENANCE | | Back to Search | Print |

**Generated on:** This page was generated by TSDR on 2024-09-22 09:31:20 EDT

**Mark:** WINRED

# WINRED

| | | |
|---|---|---|
| **US Serial Number:** 88322530 | **Application Filing Date:** | Mar. 01, 2019 |
| **US Registration Number:** 6000101 | **Registration Date:** | Mar. 03, 2020 |
| **Filed as TEAS RF:** Yes | **Currently TEAS RF:** | Yes |
| **Register:** Principal | | |
| **Mark Type:** Service Mark | | |

**TM5 Common Status Descriptor:**

LIVE/REGISTRATION/Issued and Active

The trademark application has been registered with the Office.

**Status:** Registered. The registration date is used to determine when post-registration maintenance documents are due.

**Status Date:** Mar. 03, 2020

**Publication Date:** Dec. 17, 2019

## Mark Information

### Goods and Services

**Note:**
The following symbols indicate that the registrant/owner has amended the goods/services:

- Brackets [..] indicate deleted goods/services;
- Double parenthesis ((..)) identify any goods/services not claimed in a Section 15 affidavit of incontestability; and
- Asterisks *..* identify additional (new) wording in the goods/services.

**For:** providing political fundraising services for others via a global computer network

| | | |
|---|---|---|
| **International Class(es):** 036 - Primary Class | **U.S Class(es):** | 100, 101, 102 |
| **Class Status:** ACTIVE | | |
| **Basis:** 1(a) | | |
| **First Use:** Mar. 01, 2019 | **Use in Commerce:** | Apr. 2019 |

**For:** software as a service (SAAS) services featuring software for creating websites for political fundraising, complying with political fundraising laws and regulations, managing political fundraisers, reporting on political fundraisers, making and receiving political donations, allocating political donations to marketing or consulting agencies or subcontractors, communicating with and managing political donors, promoting and selling tickets and sponsorships for political events, promoting and selling merchandise, and creating and managing online petitions

| | | |
|---|---|---|
| **International Class(es):** 042 - Primary Class | **U.S Class(es):** | 100, 101 |
| **Class Status:** ACTIVE | | |
| **Basis:** 1(a) | | |
| **First Use:** Mar. 01, 2019 | **Use in Commerce:** | Apr. 2019 |

## Basis Information (Case Level)

## Current Owner(s) Information

| | |
|---|---|
| **Owner Name:** | WINRED TECHNICAL SERVICES, LLC |
| **Owner Address:** | 4250 Fairfax Drive |
| | Suite 600 |
| | ARLINGTON, VIRGINIA UNITED STATES 22203 |
| **Legal Entity Type:** LIMITED LIABILITY COMPANY | **State or Country Where Organized:** DELAWARE |

**MARK W. DOBRONSKI**
POST OFFICE BOX 99
DEXTER, MICHIGAN 48130-0099
(734) 641-2300
markdobronski@yahoo.com

September 23, 2024

United States District Court
Attn: Clerk's Office
231 West Lafayette Boulevard, 5th Floor
Detroit, Michigan 48226-2700

   Re: NEW FILING
     Mark W. Dobronski v. Winred, Inc., *et al.*

Dear Sir or Madam:

   Enclosed please find:

> •  Check number 6174, in the amount of $405.00, representing the filing fee required for the above-case;

> •  Civil Cover Sheet

> •  Two (2) Summonses; and,

> •  Complaint

   Please file the Complaint in your usual course and return the signed Summonses to the attention of the undersigned.

   Thank you for your attention to this matter.

        Very truly yours,

        Mark W. Dobronski

MWD/hp

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

MARK W. DOBRONSKI

**(b)** County of Residence of First Listed Plaintiff    Orange, FL
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

PRO SE

### DEFENDANTS
WINRED, INC. and
WINRED TECHNICAL SERVICES, LLC

County of Residence of First Listed Defendant    Arlington, VA
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1   U.S. Government Plaintiff
- [ ] 2   U.S. Government Defendant
- [x] 3   Federal Question *(U.S. Government Not a Party)*
- [ ] 4   Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*          *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care | | | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | Pharmaceutical Personal Injury Product Liability | | **PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 460 Deportation |
| | | [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards Act | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 371 Truth in Lending | [ ] 720 Labor/Management Relations | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 380 Other Personal Property Damage | [ ] 740 Railway Labor Act | | [ ] 485 Telephone Consumer Protection Act |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 385 Property Damage Product Liability | [ ] 751 Family and Medical Leave Act | **SOCIAL SECURITY** | [ ] 490 Cable/Sat TV |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice | | [ ] 790 Other Labor Litigation | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/Exchange |
| [ ] 196 Franchise | | | [ ] 791 Employee Retirement Income Security Act | [ ] 862 Black Lung (923) | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | [ ] 863 DIWC/DIWW (405(g)) | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | | [ ] 864 SSID Title XVI | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | [ ] 865 RSI (405(g)) | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | | | [ ] 896 Arbitration |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | **FEDERAL TAX SUITS** | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 950 Constitutionality of State Statutes |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
47 U.S.C. 227

Brief description of cause:
Illegal text messaging calls

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $** 124,500.00

CHECK YES only if demanded in complaint:

**JURY DEMAND:**   [ ] Yes   [x] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____ DOCKET NUMBER _____

DATE
September 23, 2024

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

PURSUANT TO LOCAL RULE 83.11

1.     Is this a case that has been previously dismissed?                    ☐ Yes
                                                                             ■ No
       If yes, give the following information:

       Court: _____

       Case No.: _____

       Judge: _____


2.     Other than stated above, are there any pending or previously
       discontinued or dismissed companion cases in this or any other        ☐ Yes
       court, including state court? (Companion cases are matters in which    ■ No
       it appears substantially similar evidence will be offered or the same
       or related parties are present and the cases arise out of the same
       transaction or occurrence.)

       If yes, give the following information:

       Court: _____

       Case No.: _____

       Judge: _____


Notes :

This package is made from post-consumer waste. Please recycle - again.

UNITE
POSTA

■ Expected delivery date s

■ Domestic shipments incl

■ USPS Tracking® service

■ Limited international insu

■ When used internationall

*Insurance does not cover certai
Domestic Mail Manual at http://p
** See international Mail Manual

**FLAT RATE**
ONE RATE ■ ANY WEIG

**TRACKED ■**

PS00001000014

---

UNITED STATES
POSTAL SERVICE.

Retail ®

**P**

**US POSTAGE PAID**

**$9.85**

Origin: 48130
09/23/24
2525100130-4

**PRIORITY MAIL®**

0 Lb 7.90 Oz

**RDC 03**

EXPECTED DELIVERY DAY: 09/25/24

**C052**

SHIP
TO:

231 W LAFAYETTE BLVD
DETROIT MI 48226-2700

**USPS TRACKING® #**

9505 5123 0462 4267 3201 58

---

FROM:

MARK W DOBRONSKI
PO BOX 99
DEXTER, MI 48130-0099

**U.S. MARSHALS**

TO:

UNITED STATES DISTRICT COURT
ATTN: CLERK'S OFFICE
231 W LAFAYETTE BLVD FL 5
DETROIT, MI 48226-2700

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® and Priority Mail International® shipments. Misuses may be a violation of federal law. This package is not for resale. EP14F © U.S. Postal Service, October 2023. All rights reserved.