**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | |
|---|---|
| **MARK W. DOBRONSKI** )<br><br>Plaintiff, )<br><br>**v.** )<br><br>**WINRED, INC.** )<br><br>**WINRED TECHNICAL SERVICES, LLC.** )<br><br>Defendants. | Civil Action No.: 2:24-cv-12513<br>Honorable Stephen J. Murphy III |

**DEFENDANTS WINRED, INC.'S AND WINRED TECHNICAL SERVICES, LLC'S
MOTION FOR RULE 11 SANCTIONS**

Defendants WinRed, Inc. and WinRed Technical Services, LLC (collectively, "Defendants") ask this Court to impose sanctions, pursuant to Federal Rule of Civil Procedure 11 against Plaintiff Mark W. Dobronski for filing this lawsuit without any evidentiary basis and for maintaining the lawsuit in the face of unequivocal evidence that the claims lack merit. Pursuant to Rule 11 and Local Rule 7.1, Defendants served Mr. Dobronski with a copy of this motion 21 days ago, on October 17, 2024, and asked him to withdraw his frivolous complaint or to concur in the motion. Defendants now file this motion for sanctions because Mr. Dobronski declined to withdraw his frivolous complaint or concur in this motion.

Dated: November 8, 2024            Respectfully submitted,

 

*/s/ Christopher D. Man*

John Drosick (IL Bar No. 6326832)     Christopher D. Man (DC Bar No. 453553)
  *Counsel of Record*                 *Counsel of Record*
WINSTON & STRAWN LLP        WINSTON & STRAWN LLP
35 West Wacker Drive           1901 L Street NW

Chicago, IL 60601                        Washington, DC 20036
T: 1-312-558-5600                        T: 1-202-282-5000
F: 1-312-558-5700                        F: 1-202-282-5100
JDrosick@winston.com                     CMan@winston.com

*Counsel for WinRed, Inc. and WinRed Technical Services, LLC.*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| **MARK W. DOBRONSKI** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| **v.** | ) | Civil Action No.: 2:24-cv-12513 |
| | ) | Honorable Stephen J. Murphy III |
| **WINRED, INC.** | ) | |
| | ) | |
| **WINRED TECHNICAL SERVICES, LLC.** | ) | |
| | ) | |
| Defendants. | | |

**DEFENDANTS WINRED INC.'S AND WINRED TECHNICAL SERVICES, LLC'S
BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR RULE 11 SANCTIONS**

John Drosick (IL Bar No. 6326832)
  *Counsel of Record*
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL 60601
T: 1-312-558-5600
F: 1-312-558-5700
JDrosick@winston.com

Christopher D. Man (D.C. Bar No. 453553)
  *Counsel of Record*
WINSTON & STRAWN LLP
1901 L Street, NW
Washington, DC 20036
T: 1-202-282-5000
F: 1-202-282-5100
  CMan@winston.com

*Counsel for Defendants WinRed, Inc. and WinRed Technical Services, LLC.*

## STATEMENT OF ISSUE PRESENTED

Defendants WinRed, Inc. ("WRI" of "the PAC") and WinRed Technical Services, LLC ("WRTS," collectively "Defendants") seek sanctions under Federal Rule of Civil Procedure 11 against Mark W. Dobronski for filing this lawsuit without any evidentiary basis and refusing to dismiss this lawsuit even after Defendants provided objective evidence that his complaint lacked merit.

**MOST APPROPRIATE AUTHORITY FOR THE RELIEF SOUGHT**

The most appropriate authority for the relief sought is Federal Rule of Civil Procedure 11.

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ....................................................................................................... 1

BACKGROUND ........................................................................................................ 4

RULE 11 LEGAL STANDARD ................................................................................ 7

ARGUMENT .............................................................................................................. 8

I.      NONE OF MR. DOBRONSKI'S CLAIMS HAVE A REASONABLE BASIS ............................................................................................................... 8

      A.     Mr. Dobronski Has No Basis For Alleging Defendants Sent Him Any Text Messages ................................................................................ 8

      B.     Mr. Dobronski Consented To Receiving The Texts ........................... 12

II.     COUNT 1 FAILS TO CREDIBLY ALLEGE AN ATDS WAS USED ....... 14

III.    COUNT 2 FAILS TO CREDIBLY ALLEGE A VIOLATION ................... 17

      A.     Mr. Dobronski Fails To Allege Multiple Calls ................................... 17

      B.     The One Call Mr. Dobronski Does Allege Is Not Actionable Either ................. 18

CONCLUSION ......................................................................................................... 19

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Aikens v. Synchrony Fin. d/b/a Synchrony Bank*,
   Civ. A. No. 15-10058, 2015 WL 5818911 (E.D. Mich. July 31, 2015) ................................15

*Camunas v. Nat'l Republican Senatorial Comm.*,
   570 F. Supp. 3d 288 (E.D. Pa. 2021) ..............................................................................15, 17

*Deleo v. Nat'l Republican Senatorial Comm.*,
   2021 U.S. Dist. LEXIS 210858 (D.N.J. Nov. 1, 2021)..........................................................18

*Dobronski v. Alarm Mgmt. II, L.L.C.*,
   2020 WL 6780267 (E.D. Mich. Nov. 18, 2020) ........................................................ 4, 11-12

*Elsman v. Standard Fed. Bank*,
   238 F. Supp. 2d 903 (E.D. Mich. 2003).....................................................................................4

*Facebook, Inc. v. Duguid*,
   592 U.S. 395 (2021).....................................................................................................2, 14

*Horton v. WRTS*,
   No. JS20-00325D (Tx. Just. Ct. Oct. 12, 2021).......................................................................10

*King v. IB Property Holdings Acquisition*,
   635 F. Supp. 2d 651 (E.D. Mich. 2009)....................................................................................8

*Libby v. Nat'l Republican Senatorial Comm.*,
   551 F. Supp. 3d 724 (W.D. Tex. July 27, 2021)......................................................................17

*Mainstream Mktg. Servs. v. FTC*,
   358 F.3d 1228 (10th Cir. 2004) ...............................................................................................17

*In re Mark W. Dobronski*,
   No. M-01-0006, Order (Ariz. Mar. 28, 2001)...........................................................................3

*In re Mark W. Dobronski*,
   Nos JC-01-0001, JC-01-0002, Order (Ariz. Feb. 2, 2002) .......................................................3

*Montell v. Diversified Clinical Servs., Inc.*,
   757 F.3d 497 (6th Cir. 2014) .....................................................................................................8

*In re P2P Alliance*,
   FCC 2020 TCPA Declaratory Ruling, CG Docket No. 20-670 (June 25, 2020).................2, 15

*In re Polyurethane Foam Antitrust Litig.*,
   165 F. Supp. 3d 664 (N.D. Ohio 2015)....................................................................................12

*Reo v. WRTS*,
  2021 WL 4713395 (N.D. Oh. Apr. 23, 2021) ........................................................10

*Shirvell v. Gordon*,
  602 F. Appx. 601 (6th Cir. 2015)..................................................................8, 11

*Soliman v. Subway Franchisee Advert. Trust Fund, Ltd.*,
  104 F.4th 176 (2d Cir. 2024) ....................................................................15, 17

*Tahfs v. Proctor*,
  316 F.3d 584 (6th Cir. 2003) ............................................................................8

*Whittaker v. WRTS*,
  No. 3:20-cv-08150-PCT-JJT, Pls. Notice of Voluntary Dismissal, ECF No. 41
  (D. Ariz. May 20, 2021)..................................................................................10

*Worsham v. WRTS*,
  C-12-CV-23-000085 (Md. Cir. Ct. Feb. 20, 2024) ...........................................10

*WRI v. Ellison*,
  59 F.4th 934 (8th Cir. 2023) .......................................................................9-10

**Statutes**

47 U.S.C. § 227(a)(1) ....................................................................................14

47 U.S.C. § 227(a)(4) ....................................................................................12

47 U.S.C. § 227(b)(1)(A) ..........................................................................12, 14

47 U.S.C. § 227(b)(1)(A)(iii) ...................................................................1, 7, 14

47 U.S.C. § 227(b)(3) ....................................................................................14

47 U.S.C. § 227(c)(5) ...............................................................................3, 18

**Other Authorities**

11 C.F.R. § 100.53 .......................................................................................19

47 C.F.R. § 64.1200(c)(2) .......................................................................2, 8, 19

Eric J. Troutman, *MIXED BAG: Famous Litigator Mark Dobronski (TCPAWorld's
  W.H.?) Wins Some and Loses Some in New TCPA Ruling*, TCPAWORLD (Nov.
  20, 2023), https://tcpaworld.com/2023/11/20/mixed-bag-famous-litigator-
  mark-dobronski-tcpaworlds-w-h-wins-some-and-loses-some-in-new-tcpa-
  ruling/.............................................................................................................4

Fed. R. Civ. P. 11 ..............................................................1, 2, 5, 8, 9, 13, 18, 20

Fed. R. Civ. P. 11(b) ....................................................................................9, 12

Fed. R. Civ. P. 11(c)(1)......................................................................................9

FTC, *The Do Not Call Registry*, https://www.ftc.gov/news-events/topics/do-not-call-registry ....................................................................................................18

Jono Kupferberg, *Beginners Guide To Peer-To-Peer Texting In 2023* (June 9, 2023), https://www.hubdialer.com/blog-post/peer-to-peer-p2p-texting-guide/ ....................17

*Panel Recommends Sharp Penalty For Misconduct By Justice Of The Peace*, Az. Daily Sun (Sept. 8, 2001), https://azdailysun.com/panel-recommends-sharp-penalty-for-misconduct-by-justice-of-peace/article_a73c1350-4c01-5c80-945d-c1c5be29c243.html....................................................................................4

*Preventing Serial Filers from Abusing the TCPA,* U.S. Chamber of Commerce Institute for Legal Reform (Mar. 27, 2024), https://instituteforlegalreform.com/blog/preventing-serial-filers-from-abusing-the-tcpa/.........................................................................................................4

WinRed, FAQs, *Who Is Emailing or Texting Me?*, https://support.winred.com/en/articles/9205169-who-is-emailing-or-texting-me.............................................................................................................7, 10

WinRed, *Tips FAQ*, https://support.winred.com/en/articles/9169216-tips-faq ......................................6
U.S. Const. amend. I .........................................................................................5

## INTRODUCTION

Mr. Dobronski should be sanctioned because he filed a completely frivolous Complaint and—even after the baselessness of his claims was demonstrated to him with the service of this motion 21 days ago—he refused to honor his Rule 11 obligations to dismiss it.  Mr. Dobronski brings two counts under the Telephone Consumer Protection Act ("TCPA"): Count 1 alleges Defendants made unwanted text solicitations for campaign donations to him through an automatic telephone dialing system ("ATDS") in violation of 47 U.S.C. § 227(b)(1)(A)(iii), and Count 2 alleges one of those texts violated 47 C.F.R. § 64.1200(c)(2) because it was made to a phone number on the Do Not Call Registry.  The Complaint is deeply flawed both legally and factually, and those flaws should have been easy enough for him to identify before he filed suit.  Once those flaws were demonstrated to him 21 days ago, Mr. Dobronski should have remedied his error by dismissing the Complaint.  He did not, and now Defendants seek the sanctions of dismissing the Complaint and having Mr. Dobronski pay their attorneys' fees.

There are at least four fundamental factual and legal flaws in Mr. Dobronski's implausible complaint charging that Defendants violated the TCPA by causing him to be sent unwanted text messages soliciting donations to third-party political campaigns[1]:

*First*, there is absolutely no evidentiary basis to assert that Defendants sent or caused the text messages identified in the Complaint to be sent.  In fact, the evidence is the opposite.  And it should have been easy for Mr. Dobronski to confirm that Defendants had nothing to do with the texts being sent.

---

[1] It remains a mystery as to why Mr. Dobronski chose not to sue the actual senders of the text messages or even the campaigns that Mr. Dobronski was asked to donate to, but instead sued only WRTS and WRI which merely process such donations and distribute them to the campaigns as requested by a donor.

1

*Second*, both TCPA counts fail because Mr. Dobronski consented to these calls. He accepted WRTS' Terms of Use and Privacy Policies by donating through the WRTS campaign, and pursuant to those policies, Mr. Dobronski consented to receiving campaign-related calls from Defendants and third parties. Thus, although neither WRTS nor WRI sent Mr. Dobronski the texts in question, Mr. Dobronski consented to receiving these sorts of political texts from Defendants and third parties. (Ex. 1 (Lyk Decl. ¶21.))

*Third*, the TCPA prohibition charged in Count 1 does not apply to all calls, but only calls made by a narrowly defined "automatic telephone dialing system," and there is no basis to assert the texts Mr. Dobronski received were sent through such a device. *Facebook, Inc. v. Duguid*, 592 U.S. 395, 396 (2021) (holding that TCPA's ATDS definition excludes equipment that does not use a random or sequential number generator). To the contrary, political campaigns who make text solicitations typically hire a peer-to-peer ("P2P") vendor, and the FCC recognizes that P2P texts do not violate the TCPA. *See In re P2P Alliance*, FCC 2020 TCPA Declaratory Ruling, CG Docket No. 20-670 (June 25, 2020).

*Fourth*, the TCPA count charged in Count 2 fails because violations of the Do Not Call Registry are actionable only when someone "has received *more than one* telephone call within any 12-month period by or on behalf of the same entity" in violation of the applicable regulations and Mr. Dobronski has alleged only one such call. 47 U.S.C. § 227(c)(5) (emphasis added). Apparently recognizing that an exception exists that allows political solicitations to be made, Mr. Dobronski tries to dress up the one call alleged in this count as for "the purchase of goods" (DE1 at 21 ¶79), but even that is not true. On its face the text asks him to "give" a donation of at least $25 "to help defend and expand the Republican House Majority" and tells him that, if he did, he

would be sent a promotional coffee mug.  (*Id.* ¶78.)  That is not a sale, it is a campaign donation and would be treated as such by the Federal Election Commission ("FEC").  (Ex. 1 ¶29.)

Making matters worse, Mr. Dobronski has an appalling history of abusing the legal process. Despite not having a law degree, Mr. Dobronski somehow was elected Justice of the Peace in Scottsdale Justice Court, but he abused this office so badly that he received an unprecedented barrage of complaints.  As a result, the Commission on Judicial Conduct recommended Mr. Dobronski be removed from office and the Arizona Supreme Court stripped him of all his judicial authority.[2]  He then resigned.  The Arizona Supreme Court then sanctioned him by ordering him to pay the Commission $30,000 in attorneys' fees and then emphatically ordered that he "shall never again seek or hold judicial office in the State of Arizona."  *See In re Mark W. Dobronski*, Nos. JC-01-0001, JC-01-0002, Order (Ariz. Feb. 2, 2002) (Ex.  2.)

Mr. Dobronski now abuses the legal system as a serial litigant of TCPA claims.[3]  Since 2017, Mr. Dobronski has filed over sixty *pro se* complaints alleging TCPA violations in this Court alone.  (Ex. 5 (chart listing cases filed).)  In addition to his reputation as a prolific litigation hobbyist, he is reportedly "famous for his generally unpleasant disposition."[4]  And Mr. Dobronski

---

[2] *See In re Mark W. Dobronski*, No. M-01-0006, Order (Az. Mar. 28, 2001) (Ex. 3).  Reportedly, more than 40 complaints were filed against him, including making racist jokes about a Hispanic litigant's name, improperly threatening counsel and litigants with contempt, dangling handcuffs in front of defendants, denying parties the right to be heard, and making uninformed quick decisions simply to clear his calendar.  *See Panel Recommends Sharp Penalty For Misconduct By Justice Of The Peace*, Az. Daily Sun (Sept. 8, 2001), https://azdailysun.com/panel-recommends-sharp-penalty-for-misconduct-by-justice-of-peace/article_a73c1350-4c01-5c80-945d-c1c5be29c243.html (Ex. 4.).

[3] *Preventing Serial Filers from Abusing the TCPA,* U.S. Chamber of Commerce Institute for Legal Reform (Mar. 27, 2024), available at https://instituteforlegalreform.com/blog/preventing-serial-filers-from-abusing-the-tcpa/ (Ex. 7.).

[4] *See, e.g.* Eric J. Troutman, *MIXED BAG: Famous Litigator Mark Dobronski (TCPAWorld's W.H.?) Wins Some and Loses Some in New TCPA Ruling*, TCPAWORLD (Nov. 20, 2023), available at https://tcpaworld.com/2023/11/20/mixed-bag-famous-litigator-mark-dobronski-tcpaworlds-w-h-wins-some-and-loses-some-in-new-tcpa-ruling/ (Ex. 6.).

has been sanctioned by this Court for filing a frivolous complaint in at least one of those cases. *See Dobronski v. Alarm Mgmt. II, L.L.C*., 2020 WL 6780267 at \*7-8 (E.D. Mich. Nov. 18, 2020). It is time for Mr. Dobronski's abuse of the legal system—particularly in this Court—to stop.  That is precisely why Rule 11 sanctions exist.  *See Elsman v. Standard Federal Bank*, 238 F. Supp. 2d 903, 908 (E.D. Mich. 2003) ("The central purpose of Rule 11 is to deter baseless filings in district court.") (citing *Cooter & Gell v. Hartzmarx Corp.,* 496 U.S. 384, 393 (1990)).[5]

## BACKGROUND

Political fundraising for candidates and campaigns is at the heart of the First Amendment and, in the modern era, most campaign donations are made electronically by credit card.  Given the routine and essential nature of these solicitations, candidates and campaigns typically hire a legally compliant platform to assist in processing such donations.  WinRed is widely used platform for right of center candidates and campaigns, and it operates similarly to ActBlue, which provides a platform for left of center candidates and campaigns.

Although WRI and WRTS share "WinRed" in their name, they are separately incorporated entities.  (Ex. 1 ¶5.)  WRTS created the website and provides the "back end" services that WRI uses to collect contributions for certain political committees and then transmits those contributions to the recipient political committees in accordance with FEC rules and regulations. (*Id.* ¶ 8).  In effect, WRI is a client of WRTS.   (*Id.* ¶ 6.)   WRI is a non-connected political action committee registered with the FEC and the entity that receives federal incoming "earmarked" contributions made via the WRTS platform.  In rare instances, a campaign may have a merchant account that received contributions directly from WRTS without going through the PAC.   An

---

[5] Much of the Complaint is littered with inflammatory irrelevancies about the TCPA being enacted to prevent a barrage of robocalls, tying up phone lines of emergency responders, and fraudulent telemarketing schemes.  Not even Mr. Dobronski alleges WRTS or WRI did any of these things.

"earmarked" contribution is simply a contribution for a specific political committee that cannot be sent anywhere else.

Each candidate and campaign that uses the WRTS platform creates its own webpages, which typically tout the merits of the campaign and solicit donations. The campaigns often advertise through other mediums, such as television and radio commercials, internet posts, flyers, yard signs, in person canvassing, emails and text messages, and those advertisements often direct people to the WRTS website for payment.

Neither WRI nor WRTS ever solicit donations on behalf of the candidates or campaigns that use the WRTS website, and neither ever send text messages for commercial purposes.[6] Nevertheless, because the campaigns or others who send text messages in support of a candidate or campaign often include a link to the WRTS website so donations can be made (anyone can copy any website link and paste it into a text message), text recipients sometime mistake WRTS or WRI as the sender of the text.

But it is easily discoverable by the recipient of the text messages—such as Mr. Dobronski—that WRTS and WRI are not the sender of these messages. Typically, the text message itself identifies the sender. For example, candidates commonly introduce themselves, explain what they seek to accomplish, and solicit a donation. Solicitations for campaign donations always identify the campaign being supported as well.

To avoid any confusion, the home page of WRTS's website maintains a "Donor Support" section. Users who click on Donor Support are asked their reason for contacting. One reason

---

[6] Recently, WRI and WRTS have added a feature where they may solicit tips for themselves. The solicitation is made on the website only *after* a donor has agreed to give to a campaign. Neither WRTS nor WRI sends emails or texts soliciting tips. *See* WinRed, *Tips FAQ*, https://support.winred.com/en/articles/9169216-tips-faq (Ex. 8.).

listed is "Text Messages and Emails" from a dropdown menu.  When clicked by a user, the webpage instructs: "If you are receiving text messages containing WinRed links, these are not being sent by us.  They are likely being sent by a campaign or other organization using WinRed to raise money."  WinRed, FAQs, *Who Is Emailing or Texting Me?,* https://donors.winred.com/en/articles/3773576-unsubscribing-from-texts-or-emails (Ex. 9.).

Under the heading "Unsubscribing from Donation Requests," the webpage further directs a user to contact the actual messenger:

> If you are receiving text messages containing WinRed links, these are not being sent by us.  They are likely being sent by a campaign or other organization using WinRed to raise money.  Likewise, emails you receive asking for donations are also likely sent by a campaign or committee.  If it is being sent from WinRed, it will be sent from the email domain @winred.com.  To unsubscribe from texts or emails not sent by WinRed, you will need to contact whoever is messaging you.  Or you can reply STOP to text messages and click the UNSUBSCRIBE link in emails.

*Id.*

WinRed users that make a donation through the website—such as Mr. Dobronski who made a $100 donation on April 11, 2020 to Trump Make America Great Again committee—are required to accept WRTS' Terms of Use Policy and Privacy Policy, which make clear (1) that they are consenting to receive text messages from candidates and campaigns, from WRTS and WRI, and from other third parties, and (2) as WRTS's Privacy Policy states in bold, WRTS "**does not make calls or send text messages for marketing purposes**."  (Ex. 1(A).)  This guidance also is provided if a user seeks to contact WRTS through a direct message on the WRTS website, a chat function through a bot on the website, by email or by placing a call to WRTS.  Thus, Mr. Dobronski, like all WinRed users, has consented to receive political texts from third parties and knew (or should have known) that no text solicitations would be made by WRTS or WRI.

Mr. Dobronski also should have known that neither WRTS nor WRI was sending him text

messages because he never provided them the phone number that received the text messages.  He gave a different phone number when donating through the WRTS platform.  (Ex. 1 ¶16.)

Despite the fact that neither WRTS nor WRI sent Mr. Dobronski text solicitations, Mr. Dobronski filed a Complaint on September 25, 2024, in this Court alleging WRTS and WRI committed eighty-three violations of the TCPA, specifically by violating 47 U.S.C. § 227(b)(1)(A)(iii) (Count 1) and 47 C.F.R. § 64.1200(c)(2) (Count 2).  (DE1 at 20-21 ¶¶ 74-81.)  None of the phone numbers that sent the text messages are associated with WRTS or WRI, nor does WRTS nor WRI have the phone number that Mr. Dobronski complains received the text messages in its database.  So, the entire basis for his complaint is that whoever sent the text messages included a link to the WRTS website in those texts.  (DE1 at 16 ¶65.)  That is woefully insufficient to state a claim under the TCPA.

Tellingly, Mr. Dobronski has not provided the text messages that were sent.  It is fair to assume this evidence would gut his allegations by establishing that WRTS and WRI did not send the text messages.  And 79 of the 82 links that he includes are inoperable, so there is no evidence that they do link to the WRTS website.  Of course, even if it were true that someone copied an internet link to a website and sent the text message, that is hardly evidence that the website provider sent the text.  People commonly copy and paste links to websites into texts and emails that they send others without any knowledge by the website provider that those messages have been sent.

### RULE 11 LEGAL STANDARD

By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an unrepresented party . . .  certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; [and] (3) the factual contentions have evidentiary support or, if

specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.

Fed. R. Civ. P. 11(b).

Rule 11 "'stresses the need for some pre-filing inquiry into both the facts and the law to satisfy the affirmative duty imposed.'" *Shirvell v. Gordon*, 602 F. Appx. 601, 604-5 (6th Cir. 2015) (quoting *Merritt v. Int'l Ass'n of Machinists & Aero. Workers*, 613 F.3d 609, 626 (6th Cir. 2010)). This legal standard applies the same to unrepresented parties who sign their names to a pleading as it does to parties represented by counsel.  In *King v. IB Property Holdings Acquisition*, 635 F. Supp. 2d 651 (E.D. Mich. 2009), the Court emphasized that a party proceeding *pro se* must abide by Rule 11's requirements and that dismissal is an appropriate sanction for a *pro se* party's intentional misrepresentations.

When a party fails to abide by these requirements, Rule 11(c)(1) authorizes the Court to "impose an appropriate sanction on any attorney, law firm, *or party* that violated the rule or is responsible for the violation" (emphasis added).  Rule 11 sanctions are appropriate when the district court determines that conduct is not "reasonable under the circumstances." *See Montell v. Diversified Clinical Servs., Inc.*, 757 F.3d 497, 510 (6th Cir. 2014).  Reasonableness must be assessed under an "objective standard," meaning a good faith belief in the merits of a case is not sufficient to avoid sanctions.  *See Tahfs v. Proctor*, 316 F.3d 584, 594 (6th Cir. 2003).

## ARGUMENT

## I.     NONE OF MR. DOBRONSKI'S CLAIMS HAVE A REASONABLE BASIS

### A.     Mr. Dobronski Has No Basis For Alleging Defendants Sent Him Any Text Messages

Neither WRTS nor WRI send text message solicitations in support of any campaigns. Neither WRTS nor WRI engages in any solicitations on behalf of campaigns; those activities are left to the campaigns and others.  WRTS is merely a payment platform and WRI is merely the PAC

by which contributions flow to reach the campaigns designated by donors.  Solicitations are not part of the WinRed business model.  Additionally, none of the phone numbers Mr. Dobronski identifies as having sent the text messages to him are associated with WRTS or WRI in any way, and neither WRTS nor WRI even knew the phone number that received the text messages.  As a result, neither WRTS nor WRI sent messages to Mr. Dobronski.

Solicitors typically identify both themselves and the campaigns they support in text messages, which largely clears up any mystery about the sender's identity.  But WinRed goes further and makes clear that neither WRTS nor WRI is the sender.  In donating through WRTS' website, Mr. Dobronski agreed to a Privacy Policy that specifically told him in bold that WRTS "**does not make calls or send text messages for marketing purposes**."  (Ex. 1(A).)  The website further instructs: "If you are receiving text messages containing WinRed links, these are not being sent by us.  They are likely being sent by a campaign or other organization using WinRed to raise money."  *See* WinRed, FAQs, *Who Is Emailing or Texting Me?*, *supra* at 6 (Ex. 9.).   And even if Mr. Dobronski's pre-filing due diligence did not alert him to these facts, he was certainly aware of them 21 days ago when this sanctions motion was sent to him, but he still has not withdrawn his complaint in the face of this evidence.

Mr. Dobronski has no reason to believe anything to the contrary, just the opposite.  He claims, "Defendants have been previously haled into federal court for similar violations of the TCPA" (DE1 at 20 ¶76), but he should see from those cases that no plaintiff has prevailed in a TCPA claim against either WRTS or WRI.[7]  He certainly was alerted to that fact when he was

---

[7] Curiously, Mr. Dobronski cites to federal litigation concerning subpoenas issued by state Attorneys General concerning WinRed.  DE1 at 15-16 ¶63; *see WRI v. Ellison*, 59 F.4th 934 (8th Cir. 2023).  Those subpoenas and investigations had nothing to do with text messages or the TCPA and, long after compliance was made with those subpoenas, not a single Attorney General has brought any claims of wrongdoing against WRTS or WRI.

served with this motion 21 days ago.  Mr. Dobronski has been disingenuous with the Court by not adding that every time WRTS or WRI has been haled into court for an alleged TCPA violation, WRTS and WRI have prevailed because they do not send text messages in violation of the TCPA. *See Reo v. WRTS*, 2021 WL 4713395, at *3 (N.D. Oh. Apr. 23, 2021); *Whittaker v. WRTS*, No. 3:20-cv-08150-PCT-JJT, Pls. Notice of Voluntary Dismissal, ECF No. 41 (D. Ariz. May 20, 2021); *Worsham v. WRTS*, C-12-CV-23-000085 (Md. Cir. Ct. Feb. 20, 2024) (Ex. 9.); *Horton v. WRTS*, No. JS20-00325D (Tx. Just. Ct. Oct. 12, 2021) (Ex. 10.).

Moreover, Mr. Dobronski cannot even plausibly allege how he believes WRTS or WRI would have his phone number.  When Mr. Dobronski submitted a donation through WRTS, he provided a different phone number than the one he now complains received the unwanted text messages.  (Ex. 1 ¶16.)  Neither WRTS nor WRI knew the phone number was associated with Mr. Dobronski or had any record of the phone number that received the text messages.

The only basis for Mr. Dobronski's claims is his speculation that WRTS or WRI must have been involved in sending the texts because whoever sent him the text messages included links to the WRTS website, but that ignores the fact that WRTS and WRI play no part in soliciting donations on behalf of campaign, they make that explicit to donors and on its website, and they did not even have the phone number that received the text messages.

Anyone can copy a website link and paste it into a text message.  The process of copying a link to a webpage and texting it to someone is not unique to the political sphere.  People may do the same in texting someone the link to a website with information they find interesting, such as a news article, a picture, a GoFundMe webpage or other charitable solicitation, or even an opinion on this Court's website, and a child hoping to get what he or she wants for a birthday may text parents links to websites, such as Amazon, where what they want can be purchased.  Recipients

may not always welcome those texts, but that is a dispute between the sender and the receiver. Because links to all websites can be copied and texted, ecommerce and the internet itself would cease to exist if simply maintaining a website could become a basis for civil liability whenever a website's link is improperly texted by a third party. (Ex. 1 ¶18.) Just because an individual can send a text with a link to WRTS' website does not mean that WRTS or WRI is the sender of those texts or that either Defendant is in an agency relationship with the true senders and thus can be liable for their actions.

Moreover, of the 82 calls that Mr. Dobronski identifies as having links that lead to the WRTS website, 79 of them are inoperable and do not lead anywhere. Thus, even under Mr. Dobronski's erroneous theory that a website provider is liable for a TCPA violation whenever someone copies and pastes a link to that website into an unwanted text message, his complaint is still lacking evidentiary support.

Sanctions are warranted because Mr. Dobronski simply failed to engage in any meaningful "pre-filing inquiry," *Shirvell*, 602 F. Appx. at 604-605, and his claims lack "evidentiary support" even "after an inquiry reasonable under the circumstances." Fed. R. Civ. P. 11(b), or, worse, he ignored all the facts inconsistent with his theory of liability. After WRTS and WRI gave Mr. Dobronski advance notice of this sanctions motion and an opportunity to cure his mistake by dismissing the Complaint, Mr. Dobronski doubled down and chose to proceed even after notice of his errors and that this motion for sanctions was coming.

This is a pattern and practice of Mr. Dobronski. He faced sanctions and an award of attorneys' fees and costs for pursuing a similar baseless tactic in *Dobronski v. Alarm Mgmt. II, L.L.C.*, 2020 WL 6780267, at *4 (E.D. Mich. Nov. 18, 2020). There, as here, Mr. Dobronski's claim that a defendant called him was "devoid of facts" providing any reasonable basis to conclude

the defendant placed the calls.  *Id.*  This Court (Judge Cleland) took into account that Mr. Dobronski is bound by Rule 11 as a litigant, even if not an attorney, and that he should know better based on his legal experience as a judge (even a disgraced judge).  *See also In re Polyurethane Foam Antitrust Litig.*, 165 F. Supp. 3d 664, 666 (N.D. Ohio 2015) ("[P]ro se filings do not serve as an impenetrable shield, for one acting pro se has no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets.").  Since then, Mr. Dobronski has filed an avalanche of more TCPA cases.  Even more importantly, Mr. Dobronski was alerted to the frivolous nature of his complaint through advance service of this motion.  His refusal to use the cure period provided by Rule 11 to correct his mistake constitutes willful misconduct warranting sanctions.

### B.  Mr. Dobronski Consented To Receiving The Texts

There is no viable TCPA claim under either count because Mr. Dobronski consented to receive the text messages.  Section 227(b)(1)(A) at issue in Count 1 has an exception where a call is "made with the prior express consent of the called party."  Likewise, the TCPA excludes persons with "an established business relationship" from the calls that are prohibited by the Do Not Call Registry, as alleged in Count 2.  *See* 47 U.S.C. § 227(a)(4), (c)(1).

Although Mr. Dobronski claims he never consented to being texted and never had an established business relationship with the Defendants, that is not true.  Mr. Dobronski used the WRTS platform to make a $100 donation on April 11, 2020 to Trump Make America Great Again Committee.  In doing so, just below the "Donate" button that he clicked to complete the transaction it read: "By clicking 'Donate' I accept WinRed's <u>terms of use</u> and <u>privacy policy</u>."  The underlined terms conveniently linked to those policies.  By agreeing to those terms, Mr. Dobronski agreed to receive text messages from WRTS, the PAC, and others.  (Ex. 1 ¶21.)

The Privacy Policy Mr. Dobronski agreed to states: "We, political committees or campaigns, or page creators that use our Platform, or other third parties may contact you about your contribution, or the candidate, political committee or campaign to whom you contributed or other candidates, campaigns or issues that may be of interest to you." (Ex. 1(A).)  A specific heading in the policy also stated that information could be used "For Marketing Purposes," explaining: "We might use your information to serve you ads about specific candidates or remind you to make or complete a contribution.  We might tell you about new features or updates.  We, our partners, or page creators, political committees or campaigns, may also use your information to send you electronic communications, including through email or text message." *Id.*

Another specific heading stated that information could be used "With Third Parties for Marketing Purposes," and explained: "This may include political committees or campaigns of candidates that may be of interest to you.  These third parties may also share your information with others.  These third parties may use your information for their own marketing purposes or the marketing purposes of others." (*Id.*)  Plaintiff also was advised that his information would be shared with the campaign he supported and that "[p]age creators, political committees, campaigns, or third parties that receive your information from page creators, political committees or campaigns, may send you political communications or other marketing communications, and may use your information for purposes including the promotion of the Republican Party." *Id.*  Finally, under the heading "Communications from Political Committees, Campaigns and Other Third Parties," the Privacy Policy provided: "If you wish to opt out of receiving marketing communications from any third party, please contact that third party directly to do so." *Id.*

To be clear, neither WRTS nor WRI sent Mr. Dobronski the text messages that he complains about receiving, but Mr. Dobronski consented to receiving text messages from Defendants, as well

as political campaigns and others promoting Republican candidates.   Thus, Mr. Dobronski's complaint has no plausible basis to claim that the Defendants caused these texts to be sent or that he did not consent to receiving these types of text messages.   Proceeding with this litigation anyway is sanctionable.

## II.   COUNT 1 FAILS TO CREDIBLY ALLEGE AN ATDS WAS USED

Mr. Dobronski failed to allege any credible basis to believe the TCPA has been violated in Count 1.   Section 227(b)(1)(A)(iii) does not prohibit all calls, but only calls made through a narrowly defined ATDS device.   While Defendants have no idea who sent the texts to Mr. Dobronski, WRTS and WRI do not send text messages through an ATDS, nor do political campaigns generally use this type of service since the TCPA was passed.   Instead, political campaigns typically make text solicitations through a TCPA-compliant P2P vendor.

Section 227(b)(1)(A) prohibits calling "any telephone number assigned to a . . .  cellular telephone service" using "any automatic telephone dialing system" absent "prior express consent of the called party."   *See also* 47 U.S.C. § 227(b)(3) (providing a private right of action).   An ATDS is defined as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).   The Supreme Court has strictly construed that limitation. *Facebook, Inc. v. Duguid*, 592 U.S. 395, 396 (2021).

There is no reason why sophisticated political candidates (including elected Members of Congress) would risk TCPA liability and annoying prospective voters by using an ATDS when P2P methods are a commonplace legal alternative.   To comply with the TCPA, political campaigns that solicit text donations typically hire a P2P vendor.   (Ex. 1 ¶13.)   The key feature of a modern P2P system is that it only sends a text message after a person *manually*, usually through the click of mouse, sends each individual message to the numbers to be texted.   The FCC released a

14

declaratory ruling confirming P2P texting complies with the TCPA.  *See In re P2P Alliance*, FCC

2020 TCPA Declaratory Ruling, CG Docket No. 20-670 (June 25, 2020).  Moreover, political

campaigns typically work from likely donor lists, rather than by sending texts to random or

sequential numbers.  *See Soliman v. Subway Franchisee Advert. Trust Fund, Ltd.*, 104 F.4th 176,

180 (2d Cir. 2024) (explaining "[t]hree circuits—the only circuit courts to consider the issue—

have held that the TCPA covers only ATSDs that generate *telephone* numbers, that is, systems

that do not rely on pre-existing lists of telephone numbers" and joining those circuits).

Although Mr. Dobronski alleges an ATDS was used to make the calls, it is a conclusory

claim without any evidentiary basis.  Threadbare allegations an ATDS was used are not enough;

plaintiffs must offer some reason to believe an ATDS was used.  *See, e.g.*, *Aikens v. Synchrony

Fin. d/b/a Synchrony Bank*, Civ. A. No. 15-10058, 2015 WL 5818911, at *3 (E.D. Mich. July 31,

2015), *report and recommendation adopted*, 2015 WL 5818860, at *1 (E.D. Mich. Aug. 31, 2015).

"[C]ourts permit the allegation of an automatic system to be pled on information or belief, but

require additional factual information, such as the absence of a relationship between the parties

and the random nature of the automation device."  *Camunas v. Nat'l Republican Senatorial

Comm.*, 570 F. Supp. 3d 288, 293 (E.D. Pa. 2021) (quoting *Zemel v. CSC Holdings*, 2018 WL

6242484, at *3 (D.N.J. Sept. 21, 2020)).  And "[a] plaintiff must provide 'at least some [ ] detail

regarding the content of the messages or calls, thereby rend[ering] the claim that an ATDS was

used more plausible.'"  *Id.* (quoting *Norman v. Sito Mobile Sols.*, 2017 WL 1330199, at *3 (D.N.J.

Apr. 6, 2017)).

Mr. Dobronski does not even include copies of the alleged text messages and his only

explanation for his claim an ATDS was used is the "generic and impersonal nature of the texts

messages and the use of a link in each message," as well as "the fact that, when Plaintiff send [sic]

a 'STOP' message in response to a received text message, a nearly instantaneous response of 'You have successfully unsubscribed' is received."  (DE1 at 19-20 ¶¶71-72).  These allegations provide no support for the conclusion that the senders used an ATDS system rather than a P2P system.

Campaign solicitation text messages sent through a P2P system may seem generic and impersonal, but that is because text messages are inherently short and the purpose of campaign text solicitations is to deliver the same message: a request for campaign donations.  Mr. Dobronski assumes, without providing any other factual allegation, that generic and impersonal campaign solicitations must necessarily come from random or sequential number generators.  The one example of a text that Mr. Dobronski does provide suggests the opposite.  That text message addresses him by name as "Mark" and an ATDS that was randomly choosing phone numbers or dialing numbers sequentially would not know to do that.  (DE1 at 20-21 ¶78.)

Moreover, there is no reason to believe the text messages were sent to him randomly or based on a sequential number, as campaign text solicitations rarely work that way.  Instead, vendors typically target prior donors to similar campaigns.  Although Mr. Dobronski generally has not identified which campaigns he was asked to support, it would seem likely that he was being asked to support other Republican candidates based on his prior history of giving to President Trump's campaign and perhaps other campaigns.  Indeed, that is true of the only text message that Mr. Dobronski does provide where he is asked to make a donation "to help defend and expand the Republican House Majority."  (DE1 at 20-21 ¶78.)  Given the legality and prevalence of P2P systems for political fundraising, Mr. Dobronski has no good faith basis, nor did he allege one, that a text solicitor would go out of its way to use a system that would be unlawful under the TCPA.

16

The fact that Mr. Dobronski received an automated response to a "STOP" text message that he sent back does not prove an ATDS was used to send texts to him.  This is a standard convention of P2P texting tools.  *See, e.g.*, Jono Kupferberg, *Beginners Guide To Peer-To-Peer Texting In 2023* (June 9, 2023), https://www.hubdialer.com/blog-post/peer-to-peer-p2p-texting-guide/ (Ex. 11.).  Accordingly, the use of a "STOP" function does not establish that an ATDS was used.  *Soliman*, 101 F.4th at 178 (affirming dismissal of a TCPA claim that alleged an ATDS was used based on a "STOP" function being included in a text).  To the contrary, use of the "STOP" convention is another indicator that P2P texting was used.

Mr. Dobronski's unsupported speculation that he received messages from an ATDS system, when he has no personal knowledge or factual basis to distinguish those messages from lawful P2P systems, is substantiated by nothing more than wishcasting.  This is not adequate to satisfy his Rule 11 burden.  He should be sanctioned for persisting with this frivolous litigation.

## III.   COUNT 2 FAILS TO CREDIBLY ALLEGE A VIOLATION

### A.   Mr. Dobronski Fails To Allege Multiple Calls

Mr. Dobronski attempts to state a claim under Section 227(c)(5), but he fails to even allege a key element, that he "received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the [applicable] regulations."  47 U.S.C. § 227(c)(5).  He alleges only a single unlawful call was made in Count 2.  (DE1 at 21 ¶¶78-79.)

Mr. Dobronski does not rely upon the other calls listed in Count 1 because he apparently recognizes that, "[b]ecause of the limits to FTC's authority, the Registry does not apply to political calls."  FTC, *The Do Not Call Registry*, https://www.ftc.gov/news-events/topics/do-not-call-registry; *see also Mainstream Mktg. Servs. v. FTC*, 358 F.3d 1228, 1234 (10th Cir. 2004) (Ex. 12.) ("[t]he national do-not-call registry's restrictions apply only to telemarketing calls made by or on behalf of sellers of goods or services, and not to charitable

17

or political fundraising calls."); *Camunas v. Nat'l Republican Senatorial Comm.*, 570 F. Supp. 3d 288, 301 (E.D. Penn. 2021) (same); *Libby v. Nat'l Republican Senatorial Comm.*, 551 F. Supp. 3d 724 (W.D. Tex. July 27, 2021) (dismissing because "political organizations are exempt from the Do Not Call Registry"); *Deleo v. Nat'l Republican Senatorial Comm.*, 2021 U.S. Dist. LEXIS 210858, at *21 (D.N.J. Nov. 1, 2021) (holding plaintiff could not maintain a claim because "political organizations are exempt from the Do-Not-Call Registry's restrictions").

Mr. Dobronski was explicitly told 21 days ago that, without at least one other call, his claim failed as matter of law, yet he continued to pursue Count 2.  That is sanctionable.

### B.    The One Call Mr. Dobronski Does Allege Is Not Actionable Either

Even the one text that Mr. Dobronski complains about is an exempt political call.  Mr. Dobronski ignores the plain language of the text message he complains about in an effort to recast a political solicitation as a solicitation for the "purchase of goods, to wit: a coffee mug" in violation of 47 C.F.R. § 64.1200(c)(2).  (DE1 at 21 ¶¶79-80).  On its face the text asks him to "give" a donation of at least $25 "to help defend and expand the Republican House Majority" and tells him that, if he did, he would be sent a promotional coffee mug.  (*Id.* ¶78.)  That is not a sale, it is the provision of a promotional item to someone who makes a political donation.  (Ex. 1 ¶29.)

As Ryan Lyk, CEO of WRST, explains: "Campaigns often generate promotional items for things, such as t-shirts or coffee mugs, with logos or messages that promote the campaign.  Given the cost of creating these items, campaigns often distribute them to people who have demonstrated an interest in supporting a campaign, such as those who donate over certain dollar thresholds." (Ex. 1 ¶28.)  Even when a promotional item is provided in response to a donation to a federal campaign, no part of the donation is treated as a sale.  The entire donation amount is reported to the FEC and the full donation amount counts against a donor's contribution limits.  (*Id.* ¶29; *see*

*also* 11 C.F.R. § 100.53 ("[T]he entire amount paid as the purchase price for a fundraising item sold by a political committee is a contribution.").)

Additionally, Mr. Dobronski agreed with WRTS' Terms of Use Policy, which explained that "[i]n certain circumstances, you may be eligible to receive certain products in connection with your Contribution" and that the provision of such products is exclusively an arrangement between the donor and recipient campaign.  (Ex. 1 ¶30; *see also* Ex. 1(A).)  Mr. Dobronski was advised: "You agree and acknowledge that [WRTS] is not a party or an agent of any transaction conducted via the Platform."  (*Id.*)  Thus, it should have been clear to Mr. Dobronski that nether WRTS nor WRI have anything to do with promotional items; that is exclusively an issue between a donor and the campaign offering the promotional item.

Whether or not Mr. Dobronski read the text closely enough to determine that no sale of goods was proposed before filing the Complaint, he certainly was made aware of that when he was served this motion more than 21 days ago.  His refusal to cure his improper complaint by dismissing it flouts the very purpose of Rule 11's notice and opportunity to cure provision. Sanctions are warranted.

## CONCLUSION

Defendants request that Mr. Dobronski be sanctioned with the dismissal of his complaint and an award of attorneys' fees to Defendants.

Respectfully submitted,

/s/ Christopher D. Man_____

John Drosick (IL Bar No. 6326382)          Christopher D. Man (D.C. Bar No. 453553)
   *Counsel of Record*                                         *Counsel of Record*
WINSTON & STRAWN LLP                      WINSTON & STRAWN LLP
35 West Wacker Drive                              1901 L Street, NW
Chicago, IL 60601                                    Washington, DC 20036

T: 1-312-558-5600                               T: 1-202-282-5000
F: 1-312-558-5700                               F: 1-202-282-5100
JDrosick@winston.com                        CMan@winston.com

*Counsel for WinRed, Inc. and WinRed Technical Services, LL*

## CERTIFICATE OF SERVICE

I certify that on November 8, 2024, the foregoing, along with the Index of Exhibits and the attached exhibits, were served by email and U.S. First-Class Mail to the person and addresses listed below:

> Mark W. Dobronski
> PO Box 99
> Dexter, MI 48130
> Markdobronski@yahoo.com

Dated: November 8, 2024

Sydney Hartman
Law Clerk
WINSTON & STRAWN LLP
1901 L Street NW
Washington, DC 20036
SHartman@winston.com