# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **MARK W. DOBRONSKI**,<br><br>    Plaintiff,<br><br>v.<br><br>**WINRED, INC.**<br><br>**WINRED TECHNICAL SERVICES, LLC.**<br><br>    Defendants. | Civil Action No.: 2:24-cv-12513<br>Honorable Stephen J. Murphy III |

**DECLARATION OF RYAN LYK**

Pursuant to 28 U.S.C. § 1746, I declare as follows:

1. My name is Ryan Lyk, and I am the CEO of WinRed Technical Services, LLC ("WRTS"), a Virginia limited liability company. I am very familiar with the operations or WRTS and WinRed, Inc. ("WRI" or "the PAC"), and how political campaigns typically operate. I provide the testimony below based on my personal knowledge, information, and belief.

2. I have reviewed the complaint filed in this matter.

3. WRTS is a technology vendor that creates the websites and related infrastructure to permit various political candidates and committees to accept contributions.

4. WRI is a non-connected political action committee registered with the Federal Election Commission ("FEC") and the entity that receives federal incoming "earmarked" contributions made via the WRTS platform. In rare instances, a campaign may have a merchant account that received contributions directly from WRTS without going through the PAC. An "earmarked" contribution is simply a contribution for a specific political committee that cannot be sent anywhere else. Pursuant to FEC rules, once the PAC receives an earmarked contribution that contribution must be sent to the designated political committee. The PAC has no discretion over

1

the timing, recipient, or amount of earmarked contributions.

5. Although WRTS and the PAC share "WinRed" in their name, they are each separately incorporated entities.

6. The PAC is a client of WRTS, *i.e.*, WRTS created the website and provides the online payment infrastructure for the PAC and processes contributions made through the PAC. The PAC, in turn, sends the contributions to the recipient political committee designated by the donors. Candidates, campaigns and other platform users also create content on their webpages on the WRTS, which typically explain their political aims and solicit campaign contributions. Often, those who use the WRTS platform publicize their campaigns elsewhere as well, for example through their own websites, radio and television advertisements, emails and texts, yard signs, and in person canvassing, but they will direct supporters to the WRTS platform to process online campaign donations.

7. WRTS is not a political committee or political organization. All earmarked contributions to federal campaign committees—like those at issue here—are received by and subsequently disbursed from the PAC (unless the designated campaign uses a merchant account).

8. WRTS provides the "back end" services that the PAC uses to collect contributions for certain political committees and then transmits those contributions to the recipient political committees in accordance with FEC rules and regulations. For its services, WRTS receives a small fee from the committee, which is calculated as a small percentage of the contributions made through the PAC. Much of that fee is used to cover credit card processing fees.

9. Neither WRTS nor the PAC make political solicitations of any kind, including by making phone calls or sending texts, on behalf of the campaigns that use the WRTS website for fundraising purposes. Additionally, neither WRTS nor the PAC contracts with any company, person, or entity to make calls or texts to solicit donations from the public or to send political solicitations to the public. Any solicitations made on behalf of these campaigns are made by the campaigns or others.

The only time WRTS or the PAC make a solicitation to a donor is after a donation is made, when donors are asked on the website if they would like to leave a tip. Tips are never solicited by text or any other way.

10. It should not have been difficult for Mr. Dobronski to determine that neither WRTS nor the PAC sent the text messages listed in the complaint. Mr. Dobronski has not provided copies of the texts that he received, but such texts often identify the person who is sending the message and the campaign being supported is typically identified. For example, a candidate often introduces themselves and makes a pitch for why someone should donate to his or her campaign. The phone number used to send the text also should be identified, as the complaint suggests occurred here. None of those phone numbers listed in the complaint are associated with WRTS or the PAC. By simply checking the WRTS website, it would have been apparent to Mr. Dobronski that neither WRTS nor the PAC sent him the text solicitations listed in his complaint.

11. WRTS's Privacy Policy, posted on its website, makes clear in bold that WRTS "**does not make calls or send text messages for marketing purposes**." The policy also states: "Page creators, political committees, campaigns and other third parties may send you communications via email, call or text and they are solely responsible for complying with all applicable laws related to these communications. If you wish to opt out of receiving marketing communications from any third party, please contact that third party directly to do so. For text messages, you can try to reply STOP to text messages in order to unsubscribe, although we cannot guarantee that this will be effective. Please note that 'opt out' and 'unsubscribe' requests may not take effect immediately and may take a reasonable amount of time to process." https://winred.com/privacy/#your-privacy-rights.

12. The home page of WRTS's website also maintains a "Donor Support" section. Users who click on Donor Support are asked their reason for contacting. One reason listed is "Text Messages and Emails." When clicked by a user, the user is instructed: "If you are receiving text

3

messages containing WinRed links, these are not being sent by us. They are likely being sent by a campaign or other organization using WinRed to raise money." Under the heading "Unsubscribing from Donation Requests," the post further explains: "If you are receiving text messages containing WinRed links, these are not being sent by us. They are likely being sent by a campaign or other organization using WinRed to raise money. Likewise, emails you receive asking for donations are also likely sent by a campaign or committee. If it is being sent from WinRed, it will be sent from the email domain @winred.com. To unsubscribe from texts or emails not sent by WinRed, you will need to contact whoever is messaging you. Or you can reply STOP to text messages and click the UNSUBSCRIBE link in emails." https://winred.com/support/.

13. Those who are involved in raising money for campaigns through text message solicitations typically use a peer-to-peer ("P2P") vendor. A P2P texting provider is a company that uses software to contact people via text message to, among other things, solicit donations in a way that is specifically designed and intended to be compliant with the TCPA. The key feature of a modern P2P system is that it only sends a text message after a person manually, usually through the click of mouse, sends each individual message to the numbers to be texted. The FCC released a declaratory ruling to this effect. *See In re P2P Alliance*, FCC 2020 TCPA Declaratory Ruling, CG Docket No. 20-670 (June 25, 2020). The Supreme Court also has confirmed that such systems comply with the TCPA. *Facebook, Inc. v. Duguid*, 592 U.S. 395 (2021). Additionally, political campaigns typically do not text people randomly or by texting sequential numbers, but instead use targeted prospective donor lists that are crafted based on prior donor history, an expressed interest in a campaign, or some other factor that would indicate a recipient's likelihood of supporting the campaign.

14. Neither WRTS nor the PAC are P2P vendors, nor do they use P2P vendors, nor do they contract with P2P vendors.

Doc ID: 20328c361138fdfd1d5c63d7aeda26a28b1582f3

15. The complaint lists the phone numbers used to send each of the texts that Mr. Dobronski complains about, and I can confirm that none of those numbers belong to or are used by WRTS or the PAC. Neither WRTS nor the PAC used those numbers to send these texts; nor did they have any involvement in crafting the content of those texts. Nor did either WRTS or the PAC direct others to send those text messages. Neither WRTS nor the PAC know who sent those text messages or who those phone numbers belong to.

16. Because Mr. Dobronski used a different phone number when he used the WRTS website to make a campaign donation, neither WRTS nor WRI had any record of the phone number that received the texts alleged in the Complaint or knew that number was associated with Mr. Dobronski.

17. Although WRTS and the PAC played no role in anyone sending text solicitations to Mr. Dobronski and most of the links he attached to the complaint cannot be accessed to be verified, links to WRTS' website often are included in texts sent by others soliciting donations to campaigns because that is where credit card donations easily can be made. Any supporter can copy a link to a website on the WRTS website and text the link to someone in encouraging their support. Many campaigns use other forms of advertising to encourage the public to visit their webpages on the WRTS website to learn more about the campaigns and make campaign donations.

18. This process of copying a link to a webpage and texting it to someone is not unique to the political sphere. Someone may do the same in texting a friend the link to a website with information they find interesting, such as a news article, a picture, or even an opinion on this Court's website, and a child hoping to get what he or she wants for a birthday present may text parents links to webpages where what they want can be purchased. Recipients may not always welcome those texts, but that is a dispute between the text sender and the receiver. Because links to all websites can be copied and texted, ecommerce and the internet itself would cease to exist if simply maintaining a

Doc ID: 20328c361138fdfd1d5c63d7aeda26a28b1582f3

website could become a basis for civil liability whenever a website's link is improperly texted by a third party.

19. Based on personal knowledge, information, and belief, the following generally summarizes the website creation, contribution, and fundraising process where text message solicitations are used:

- A political committee contracts with WRTS to set up a website for the committee according to the committee's specifications;

- WRTS then creates the website according to the specifications pursuant to the agreement between WRTS and the political committee;

- Should the political committee choose to use the services of a P2P vendor, that P2P vendor—which is a contractor of the political committee—sends texts on the political committee's behalf (neither WRTS nor the PAC have any input into campaign decisions as to whether text message solicitations are made);

- A potential contributor receives a text and then, should they choose to do so, clicks a link in the text in order to donate;

- The link directs the potential contributor to the website hosted by the WRTS platform and created by the recipient political committee;

- The contributor then enters the information requested on the website and contributes the amount she chooses to the recipient political committee;

- The contribution (so long as it is a contribution to a federal committee) goes to the PAC;

- The contribution then passes through the PAC and is distributed to the political committee within 10 days. This process is typically much faster than 10 days and in many cases happens instantly.

20. Therefore, as outlined herein, neither WRTS nor the PAC had any involvement with sending, or causing to be sent, the text messages at issue in this case. Neither WRTS nor the PAC solicit donations by any means, including by phone or text message. WRTS has never solicited any donations from any person by any means, including by phone or text message.

21. Mr. Dobronski has used the WRTS platform to make a $100 donation on April 11, 2020 to Trump Make America Great Again Committee. In doing so, just below the "Donate" button that he clicked to complete the transaction it read: "By clicking 'Donate' I accept WinRed's terms of use and privacy policy." The underlined terms conveniently linked to those policies. By agreeing to those terms, Mr. Dobronski agreed to receive text messages from WRTS, the PAC, and others.

22. In making that donation, Mr. Dobronski provided the phone number, 734-634-2300, the same phone number he lists for this Court as his contact information in his signature block in the Complaint. Neither WRTS nor WRI have any record of the 734-xxx-9671 that Mr. Dobronski alleges received the unwanted text messages.

23. The Privacy Policy in effect at the time made clear that WRTS may collect personal information from Mr. Dobronski, including that WRTS "may also collect your mobile phone number." Mr. Dobronski also was advised: "We, political committees or campaigns, or page creators that use our Platform, or other third parties may contact you about your contribution, or the candidate, political committee or campaign to whom you contributed or other candidates, campaigns or issues that may be of interest to you." (Ex. A.)

24. A specific heading stated that information could be used "For Marketing Purposes," explaining: "We might use your information to serve you ads about specific candidates or remind you to make or complete a contribution. We might tell you about new features or updates. We, our partners, or page creators, political committees or campaigns, may also use your information to send you electronic communications, including through email or text message." (*Id.*)

Doc ID: 20328c361138fdfd1d5c63d7aeda26a28b1582f3

25. Another specific heading stated that information could be used "With Third Parties for Marketing Purposes," and explained: "This may include political committees or campaigns of candidates that may be of interest to you.  These third parties may also share your information with others.  These third parties may use your information for their own marketing purposes or the marketing purposes of others."  Mr. Dobronski also was advised that his information would be shared with the campaign he supported and that "[p]age creators, political committees, campaigns, or third parties that receive your information from page creators, political committees or campaigns, may send you political communications or other marketing communications, and may use your information for purposes including the promotion of the Republican Party."  (*Id.*)

26. Under the heading "Communications from Political Committees, Campaigns and Other Third Parties," the Privacy Policy provided: "If you wish to opt out of receiving marketing communications from any third party, please contact that third party directly to do so."  (*Id.*)

27. Mr. Dobronski also agreed to the Terms of Use Policy, which advised him under the header, "Email or SMS One-Click Contributions" that "[a]fter making a Contribution, you may receive a communication from us or a Political Committee that prompts you to make a Contribution. By clicking the "Contribute" link or otherwise following the instructions in the communication, you hereby authorize us to process a Contribution by prompting our Payment Processor to charge the method of payment that you provided in your initial Contribution."  (Ex. B.).  There is also a section titled "Linking to the Platform" that states that users may link to WRTS's platform, "provided you do so in a way that is fair and legal and does not damage our reputation or take advantage of it, but you must not establish a link in such a way as to suggest any form of association, approval or endorsement on our pat without our express written consent."  (*Id.*)

28. Count 2 of the Complaint alleges that WRTS and the PAC were involved in sending a text message, but neither WRTS nor the PAC had any involvement in sending that text message.

Doc ID: 20328c361138fdfd1d5c63d7aeda26a28b1582f3

Additionally, Paragraph 79 of the Complaint mischaracterized that text as a solicitation for "the purchase of goods," but the text message itself requested a campaign donation and said those who donate $25 or more would receive a coffee mug.  Campaigns often generate promotional items for things, such as t-shirts or coffee mugs, with logos or messages that promote the campaign.  Given the cost of creating these items, campaigns often distribute them to people who have demonstrated an interest in supporting a campaign, such as those who donate over certain dollar thresholds.

29.  Even when promotional items are given to those who make donations to a campaign, they are not treated as a sale.  The full amount of the donation is reported to the FEC as campaign donation, and it counts against a donor's contribution limits.  No portion of the amount donated is treated as a sale.

30.  The Terms of Use Policy that Mr. Dobronski agreed to advised him that, "[i]n certain circumstances, you may be eligible to receive certain products in connection with your Contribution" and that the provision of such products is exclusively an arrangement between the donor and recipient campaign.  (Ex. B.)  Mr. Dobronksi was advised: "You agree and acknowledge that [WRTS] is not a party or an agent of any transaction conducted via the Platform."  (*Id.*)

31. Although WRTS maintains numerous ways for people to raise complaints—by submitting questions directly through its website, through a bot on its website, by email and through an interactive voice response system—WRTS has no record of Mr. Dobronski ever contacting WRTS with any complaints prior to filing his lawsuit.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 16, 2024

*Ryan Lyk*
_____
Ryan Lyk
CEO, WinRed Technical Services, LLC.