# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| **MARK W. DOBRONSKI**, | Civil Action No.: **2:24-cv-12513** |
| Plaintiff, | Honorable Stephen J. Murphy III<br>United States District Judge |
| v. | |
| **WINRED, INC.** and, | Honorable Curtis Ivy Jr.<br>United States Magistrate Judge |
| **WINRED TECHNICAL SERVICES, LLC**, | |
| Defendants. | |

_____

**PLAINTIFF MARK W. DOBRONSKI'S
RESPONSE IN OPPOSITION TO
DEFENDANTS WINRED, INC. AND
WINRED TECHNICAL SERVICES, LLC'S
MOTION TO DISMISS PLAINTIFF'S COMPLAINT
UNDER RULE 12(B)(6)**

Plaintiff MARK W. DOBRONSKI, appearing *in propria persona*, hereby responds in opposition to Defendants Winred, Inc. and Winred Technical Services, LLC's Motion to Dismiss Plaintiff's Complaint Under Rule 12(b)(6) [ECF No. 9] ("Motion").

As a preliminary matter, Defendants Winred, Inc. ("Winred") and Winred Technical Services, LLC ("WRTS") have failed to comply with the "meet and confer"

1

requirement of E.D. Mich. LR 7.1(a), thereby necessitating that the Motion be stricken or denied.

    WHEREFORE, for the reasons set forth, *supra*, and in the appurtenant brief, the Defendants' instant Motion should be **denied.**

                                             Respectfully submitted,

Date: November 14, 2024                                        _____
                                                                Mark W. Dobronski
                                                                Post Office Box 99
                                                                Dexter, Michigan 48130-0099
                                                                (734) 330-9671
                                                                markdobronski@yahoo.com
                                                                Plaintiff *In Propria Persona*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **MARK W. DOBRONSKI**, | Civil Action No.: **2:24-cv-12513** |
| Plaintiff, | Honorable Stephen J. Murphy III<br>United States District Judge |
| v. | |
| **WINRED, INC.** and, | Honorable Curtis Ivy Jr.<br>United States Magistrate Judge |
| **WINRED TECHNICAL SERVICES, LLC**, | |
| Defendants. | |

_____

**PLAINTIFF MARK W. DOBRONSKI'S
BRIEF IN OPPOSITION TO
DEFENDANTS WINRED, INC. AND
WINRED TECHNICAL SERVICES, LLC'S
MOTION TO DISMISS PLAINTIFF'S COMPLAINT
UNDER RULE 12(B)(6)**

3

## CONCISE STATEMENT OF ISSUES PRESENTED

1. Whether Defendants' Motion should be stricken or denied due to Defendants failure to comply with the "meet and confer" requirement of E.D. Mich. LR 7.1(a).

    Plaintiff says:    Yes.

2. Whether Plaintiff's Complaint should be dismissed under Fed. R. Civ. P. 12(b0(6) because the Complaint allegedly lacks sufficient factual and legal support to state a claim upon which relief can be granted.

    Plaintiff says:    No.

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)

*De la Cabada v. Ytel, Inc.*, 2020 WL 1156909, at *5 (N.D.Cal., 2020)

*Holt v. Facebook, Inc.*, 240 F.Supp.3d 1021, 1027 (N.D.Cal., 2017)

*U.S. v. Ramesh*, 2009 WL 817549, at *6 (E.D.Mich.,2009)


47 U.S.C. § 227

Fed. R. Civ. P. 12(b)(6)

E.D. Mich. LR 7.1(a)

# INTRODUCTION

Plaintiff MARK W. DOBRONSKI initiated this civil action against Defendants Winred, Inc. ("Winred") and Winred Technical Services, LLC ("WRTS") arising under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. 227, stemming from a series of 82 SMS unsolicited and unwanted text messages which were sent to Plaintiff's cellular telephone. [ECF No. 1, PageID.17-19, ¶ 67]. The messages were sent using an automatic telephone dialing system. [ECF No. 1, PageID.60, ¶ 61]. At no time has Plaintiff requested, authorized, consent, permitted, or authorized the contact from the Defendants. [ECF No. 1, PageID.9, ¶ 36]. Defendants either directly sent or facilitated the sending of the text messages. [ECF No. 1, PageID.14, ¶¶ 55, 59; PageID.16, ¶ 66].

# PRELIMINARY MATTER

**A.    Defendants Have Failed to Comply With E.D. Mich. LR 7.1(a).**

E.D. Mich. LR 7.1(a)(1) promulgates:

> "Before filing a motion... the movant must ascertain before filing whether the contemplated motion... will be opposed. To accomplish this, the movant must confer with the other parties and other persons entitled to be heard on the motion in good faith and in a manner that reasonably explains the basis for the motion and allows for an interactive process aimed at reaching agreement on the matter or those aspects of the matter that can be resolved without court intervention, given the nature of the contemplated motion.

> The conference must be held sufficiently in advance of filing the motion to allow a good faith interactive exchange aimed at resolving the matter. If the movant obtains concurrence, the parties or other persons involved may make the subject matter of the contemplated motion or request a matter of record by stipulated order."

Defendants do not include any certification in the Motion as to compliance. Obviously, Defendants did not include such a certification because Defendants never telephoned Plaintiff to discuss their motion to dismiss. In a footnote, Defendants suggest that "defendant counsel emailed Mr. Dobronski and sent him a letter r5equesting his concurrence...." [ECF No. 9-1, PageID.51, n. 1]. However, the commentary to E.D. Mich. LR 7.1 clearly admonishes "sending an email without engaging the other parties will not satisfy this rule." Further, the Practice Guidelines of this Court expressly promulgate: "Parties must seek concurrence in all motions before they are filed, by speaking in person or on the telephone with opposing counsel." [Practice Guidelines, Motion Practice, The Honorable Stephen J. Murphy III]. Defendant's counsel made absolutely zero attempt at either personal or telephone communication with Plaintiff.

Seeking concurrence from the opponent is a mandatory directive of the Local Rules of this District; inasmuch as defendant has failed to comply with this Local Rule prior to filing this motion, the Court must deny the relief that defendant seeks to obtain. *U.S. v. Ramesh*, 2009 WL 817549, at *6 (E.D.Mich.,2009). The Local Rules, as well as

the Federal Rules of Civil Procedure, are called "rules," not "suggestions" or "guidelines," and as Justice (then Judge) Charles Levin stated in *People v. Farrar*, 36 Mich.App. 294, 299 193 N.W.2d 363, 366 (1971), "Unless we enforce the rules we encourage their violation...." *Bryce v. Commissioner of Social Security*, 2013 WL 12123666, at *1 (E.D. Mich. 2013).

Since Defendants failed to comply with E.D. Mich. LR 7.1(a), the Defendants' motion to dismiss should be denied.

## LEGAL STANDARD

### A. Fed. R. Civ. P. 12(b)(6)

In assessing a motion to dismiss under Rule 12(b)(6), this court construes the complaint in the light most favorable to the plaintiff, accepts the plaintiff's factual allegations as true, and determines whether the complaint "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (internal quotation and citation omitted); *Inge v. Rock Financial Corp.*, 281 F.3d 613, 619 (6th Cir., 2002). In assessing whether a plaintiff has met his burden, the Court accepts as true the plaintiff's well-pleaded factual allegations and draws all reasonable inferences in the light most favorable to the plaintiff. See *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir., 2007); see also *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556,

562–63 (6th Cir., 2011). In considering a Rule 12(b)(6) motion, a district court must limit its inquiry to the four corners of the complaint. *Trustees of Detroit Carpenters Fringe Benefit Funds v. Patrie Const. Co.*, 618 Fed.Appx. 246, 255 (6th Cir., 2015). The defendant has the burden of showing that the plaintiff has failed to state a plausible claim for relief. *Taylor v. City of Saginaw*, 922 F.3d 328, 331 (6th Cir., 2019). However, ordinarily "if the requisite allegations are not in the complaint and a motion to dismiss for failure to state a claim upon which relief may be granted is made under Rule 12(b)(6), the pleader should be given the opportunity to amend the complaint, if [he or she] can, to show the existence of the missing elements." *Walker v. Shermeta, Adams, Von Allmen, PC*, 623 Fed.Appx. 764, 768 (6th Cir., 2015).

## ARGUMENT

### I. Whether There is a Plausible Assumption that Defendants Sent the Text Messages.

Defendants assert that Plaintiff's Complaint relies "on a central flaw – an implausible allegation that Defendant (*sic*) sent Mr. Dobronski text solicitations for third-party political campaigns." [ECF No. 9-1, PageID.51]. However, the Complaint is clear in its allegation that each of the text messages included a link which would include the disclosure "Paid for by WinRed" prominently displayed. [ECF No. 1, PageID.16, ¶ 65]. An example of one of the disclosures follows:

9



The fact that the messages were ostensibly "paid for by WinRed" certainly raises beyond speculative a plausible basis to believe that Defendants have responsibility (and, hence, liability) for the sending of the unsolicited text messages.

Defendants argue that "the WRTS website makes clear why that inference is implausible" by explaining that "... organizations create pages on WinRed to raise money for their cause and then sent those pages to their supported via email, text messages, or advertising...." [ECF No. 9-1, PageID.52]. But, for purposes of the isntant Motion, the Court may only consider the four corners of the Complaint.

Defendants urge that they are not liable because "Defendants do not advertise these services, but instead identify the WRTS platform as compatible with outside vendors who do offer these services, is a clear indication that Defendants are not sending Mr. Dobronski text solicitations on behalf of campaigns." [ECF No. 9-1,

PageID.56].

Further, Defendants conveniently gloss past certain critical facts. First, Defendant are engaged in providing political fundraising services for others via a global computer network. [ECF No. 1, PageID.13, ¶ 54]. Defendants offer a "one stop shop" of bundled or packaged services to assist candidates for public office with fundraising activities. [ECF No. 1, PageID.14, ¶ 55]. The bundled packages rely upon telemarketing via text messaging as a cost effective and efficient method of seeking out consumers across the United States to contribute to the various political campaigns. [ECF No. 1, PageID.14, ¶ 56]. Defendants participate in and facilitate the scheme, including having designed the scheme and providing the necessary components as a bundled package to their client political candidates and committees and then overseeing the process. [ECF No. 1, PageID.14, ¶ 59]. Defendants' involvement in the overall scheme includes directing, controlling, and participating at every step in the marketing scheme. [ECF No. 1, PageID.16, ¶ 66]. Defendants ratify the scheme by taking their commissions and service fees from the client political candidates and committees relative to the campaign contributions generated as a result of the scheme. [ECF No. 1, PageID.16, ¶ 66].

Defendants lament that Plaintiff "…never provides the phone numbers user to send the text messages…" and "…makes no attempt to establish those phone numbers

11

are used by Defendants." [ECF No. 9-1, PageID.51]. Defendants are simply being untruthful with the Court! The Complaint clearly identifies the caller identification number displayed for each of the 82 offending text messages. [ECF No. 1, PageID.17-19, ¶ 67]. Further, the Complaint expressly recites that, when Plaintiff dialed the caller identification numbers displayed to make a verbal "do not call" demand, the dialed numbers were either disconnected or were not answered. [ECF No. 1, PageID. 19, ¶ 70]. The Complaint further clearly alleges that, with every text message received, Plaintiff was linked to a multi-color disclosure stating "Paid for by Winred." [ECF No. 1, PageID.16, ¶ 65.]

Defendants further belly aches that Plaintiff "... never provides the text messages themselves... or "... even identify the campaigns that he was asked to support." [*Id.*] But, at the pleading stage, Plaintiff's obligation is only to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under the liberal pleading requirements of the Federal Rules of Civil Procedure a complaint need contain only the most basic grounds upon which the court's jurisdiction is based and a short statement of the claim and the relief sought; concomitantly liberal discovery rules permit parties to flesh out their respective claims, defenses, and counterclaims, in due course after issue has been joined. *In re Boland*, 79 F.R.D. 665, 668 (D.C.D.C.,1978).

A text message falls within the meaning of "to make any call" under the TCPA. See *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 667, 193 L. Ed. 2d 571 (2016). For a person to 'make' a call under the TCPA, the person must either (1) directly make the call, or (2) have an agency relationship with the person who made the call. *Abante Rooter & Plumbing v. Farmers Grp., Inc*., No. 17-cv-03315-PJH, 2018 WL 288055, at *4 (N.D. Cal. Jan. 4, 2018) (citing *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 877-79 (9th Cir. 2014)). Thus, liability under the TCPA can be either direct or vicarious. *See* ECF No. 1, PageID.11, ¶ 44. The FCC "look[s] to the totality of the facts and circumstances surrounding the placing of a particular call to determine: 1) who took the steps necessary to physically place the call; and 2) whether another person or entity was so involved in placing the call as to be deemed to have initiated it, considering the goals and purposes of the TCPA." *In the Matter of Rules & Regulations Implementing the TCPA*, 30 FCC Rcd. 7961, 7980, ¶ 30 (2015). According to the FCC, "[w]hether a person who offers a calling platform service for the use of others has knowingly allowed its client(s) to use that platform for unlawful purposes may also be a factor in determining whether the platform provider is so involved in placing the calls as to be deemed to have initiated them." *Id.* at 7980-7981, ¶ 30. In the instant case at bar, Defendants provide a platform to their political clients. Defendants admit, in their Motion, that they are knowledgeable of the fact

13

that their political clients are utilizing Defendants' platform to send text messages to consumers seeking political donations, and further acknowledge that many of these consumers have complained regarding the unwanted text messages. [ECF No. 9-1, PageID.52]. At all times, Defendants had control over their platform, including the ability to terminate the illegal telemarketing activity, but took no action to curtail same. Instead, Defendants engaged in willful blindness and elected to benefit from the overall scheme, thereby pocketing over $60 Million. [ECF No. 1, PageID.15, ¶ 62]. Under these circumstances, the FCC deems Defendants to have "initiated" the calls. And, other courts have also so held. See, *e.g., Cunningham v. Montes*, 378 F.Supp.3d 741, 750 (W.D.Wis., 2019); *Office of Attorney General v. Smartbiz Telecom LLC*, 2024 WL 4251895, at *8 (S.D.Fla., 2024); *Komaiko v. Baker Technologies, Inc.*, 2020 WL 1915884, at *17 (N.D.Cal., 2020) (Plaintiffs' allegations regarding the extent of Baker's involvement in its clients' telemarketing text campaigns raise a plausible inference that Baker initiated the texts received by Plaintiffs); *Arizona v. Michael D. Lansky L.L.C.*, 2024 WL 3657129, at *15 (D.Ariz., 2024) (Defendants had actual notice of the illegal use of [Defendants' platform] and failed to take steps to prevent such transmissions and that Defendants were sufficiently involved in the illegal calls to be deemed to have initiated them); *De la Cabada v. Ytel, Inc.*, 2020 WL 1156909, at *5 (N.D.Cal., 2020) (finding liability

14

against defendant where defendant was aware of its customer's repeated TCPA violations and defendant continued to facilitate the violations by offering the customer the use of defendant's platform).

## II. Count I Plausibly Alleges an ATDS was Used.

Because plaintiffs face difficulty in knowing the type of calling system used without the benefit of discovery, plaintiffs can plausibly plead the use of an ATDS by alleging facts that indirectly suggest that such a device was used. *Horton v. Tex. Fed. for Children PAC, Inc.*, 2023 WL 3136422, at *4 (N.D. Tex. April 27, 2023). Such indirect allegations include "the content of the message, the context in which it was received, and the existence of similar messages." *Holt v. Facebook, Inc.*, 240 F.Supp.3d 1021, 1027 (N.D.Cal., 2017).

The Complaint alleges that Derfendants, either directly, or through contracted third-party telemarketers, initiate telephone calls *en masse* using automated telephone dialing systems, which have the capacity to store or produce telephone numbers to be called using a random or sequential number generator to dial such numbers, to solicit consumers to contribute to Defendants' clients' political campaigns. [ECF No. 1, PageID.15, ¶ 60]. The automated telephone dialing systems being utilized by Defendants have the capacity to use a random or sequential number generator to either store or produce phone numbers to be called; the autodialer uses the number

15

generator to determine the order in which to pick the phone numbers form a pre-produced list and store those numbers to be dialed at a later time. [ECF No. 1, PageID.16, ¶ 64]. Plaintiff had no prior relationship with the Defendants. [ECF No. 1, PageID.10, ¶ 40]. The use of an automatic telephone dialing system to send the text messages is evidence from the generic and impersonal nature of the text messages and the use of a link in each message. [ECF No. 1, PageID.19, ¶ 7]. The use of an automatic telephone dialing system to send the text messages is also evidenced by virtue of the fact that, when Plaintiff sent a "STOP" message in response to a received text message, a nearly instantaneous response of "You have successfully unsubscribed" was received. [ECF No. 1, PageID.19-20, ¶ 72].

Just because, as Defendants argue, there are "prevalent, legally compliant means for sending text messages" [ECF No. 9-1, PageID.58] does not mean that an automatic telephone dialing system was not used in the 82 instances alleged in the Complaint. [ECF No. 1, PageID.17-19, ¶ 67]. Since, in their Motion, Defendants have represented that they have no involvement in the sending of the alleged text messages, then it also follows that Defendants would have no actual knowledge as to whether an automatic telephone dialing system was used to send any of the 82 text messages identified in the Complaint.

### III.   Whether Count 2 Credibly Alleges a Violation.

### A. Whether there were multiple violative calls.

Section 227(c)(5) promulgates:

> "A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may... in an appropriate court of that State... an action...."

47 U.S.C. § 227(c)(5). The statute is clear that a private right of action accrues to "a person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection." However, not every violation of the regulations prescribed under the subsection has an attendant private right of action.

In the Complaint, Plaintiff has expressly alleged 82 text messages from Defendants. Further, Plaintiff has also alleged additional test messages prior to February 26, 2024 which Plaintiff had inadvertently deleted from his cell phone. [ECF No. 1, PageID.19, ¶ 68].

The Complaint also clearly alleges that, immediately after receiving Calls 1, 3, 6, 7, 26, 37, 51, 58, 69, 73, and 74 Plaintiff sent "STOP" messages – clearly, a "do not call" request – to Defendants. [ECF No. 1, PageID.19, ¶ 69]. 47 C.F.R. § 64.1200(d)(3) requires that persons or entities making calls for telemarketing purposes that receives a request from a residential telephone subscriber not to receive

17

calls from that person or entity, the person or entity must record the request and place the telephone number of their do-not-call list at the time the request is made. 47 C.F.R. § 64.1200(d)(6) requires a person or entity making calls for telemarketing purposes to maintain a record of a consumer's request not to receive further telemarketing calls and to honor said do-not-call request.[1]  The Sixth Circuit has expressly referred to 47 C.F.R. § 64.1200(d) as a regulation arising out of 47 U.S.C. § 227(c)(1). *Charvat v. NMP, LLC*, 656 F.3d 440, 443-444 (6th Cir., 2011).

Notwithstanding Plaintiff's express do not call demands made to Defendants, Defendants initiated Call 14 encouraging Plaintiff to purchase a coffee mug. [ECF 1, PageID.21, ¶ 79]. Thus, at the time that Call 14 was initiated, there were well over two predicate violations under Section 227(c).  First, there were Defendants' failures to record Plaintiff's do not call requests made during Calls 1, 3, 6, and 7 and/or to honor those do not call requests.  Second, there was the Call 14, itself, which was a telephone solicitation call initiated in violation of the 47 C.F.R. § 64.1200(c)(2) – Plaintiff's telephone number being listed on that National Do Not Call Registry.

### B. Whether Call 14 is Exempt from the TCPA.

Defendants argue that "the one text that Mr. Dobronski complains about is an

---

[1] These violations were also noted in the Complaint. *See* ECF No. 1, PageID.21, ¶ 80.

exempt political call under the TCPA... That is not a sale; it is the provision of a promotional item to someone who makes a political donation." [ECF No. 9-1, PageID.62].

    47 C.F.R. § 64.1200(c)(2) proscribes:

> "No person or entity shall initiate any telephone solicitation to... a residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government...."

    47 C.F.R. § 64.1200(f)(14) defines telephone solicitation:

> "The term *telephone solicitation* means the invitation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person...."

    The text message received by Plaintiff during Call 14 was clear: Plaintiff was encouraged to pay $25, and in exchange, Plaintiff would receive a coffee mug. A coffee mug is certainly "property" or "goods". The coffee mug was not free. The transaction required that Plaintiff pay $25 to receive the coffee mug.

    Defendants attempts to point to some vague terms of use disclosure which apparently appears on Defendants' web site does not change the situation. That disclosure did not appear in the text message. Nor, at this stage, may the Court consider evidence which does not appear within the four corners of the Complaint.

## CONCLUSION

WHEREFORE, the premises considered, the Court should enter its order that Defendants Winred, Inc. and Winred Technical Services, LLC's Motion to Dismiss Plaintiff's Complaint Under Rule 12(b)(6) [ECF No. 9] be **denied**.

Respectfully submitted,

Date: November 14, 2024

_____
Mark W. Dobronski
Post Office Box 99
Dexter, Michigan 48130-0099
(734) 330-9671
markdobronski@yahoo.com
Plaintiff *In Propria Persona*

## CERTIFICATE OF SERVICE

I hereby certify that on **November 14, 2024**, I electronically filed the foregoing *Plaintiff Mark W. Dobronski's Response in Opposition to Defendants Winred, Inc. and Winred Technical Services, LLC's Motion to Dismiss Plaintiff's Complaint Under Rule 12(b)(6)* with the Clerk of the Court via the Court's Pro Se Document Upload utility, which will send notification of such filing to all counsel of record via the CM/ECF system.

_____
Mark W. Dobronski