UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK W. DOBRONSKI,

        Plaintiff,

v.

WINRED, INC and WINRED
TECHNICAL SERVICES, LLC,

        Defendants.

Case No. 2:24-cv-12513

HONORABLE STEPHEN J. MURPHY, III

/

**OPINION AND ORDER GRANTING
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT [42], AND DENYING MOTION TO COMPEL AS MOOT [40]**

Mark Dobronski, proceeding pro se, sued Winred, Inc. and Winred Technical Services for violating the Telephone Consumer Protection Act ("TCPA"). ECF No. 1. Dobronski alleged that Defendants used their "one stop shop" of services for political candidates to send him eighty-two political fundraising text messages even though his phone number was on the FTC's National Do Not Call Registry. *Id.* at PageID.7, 14, 19. After the Court dismissed one of the claims, ECF No. 21, the parties proceeded to discovery. After discovery, Defendants moved to compel certain discovery responses and for summary judgment. ECF Nos. 40, 42. For the following reasons, the Court will grant Defendants' motion for summary judgment and deny the motion to compel as moot.[1]

---

[1] Based on the parties' briefing, the issues are clear. Accordingly, the Court will resolve the motion on the briefs without a hearing. *See* Fed. R. Civ. P. 78(b); E.D. Mich. L.R. 7.1(f)(2); Practice Guidelines for Judge Stephen J. Murphy, III.

1

## BACKGROUND

Dobronski sued both WinRed entities over text messages he purportedly received from WinRed's platform from February 26, 2024 through September 22, 2024. ECF No. 44, PageID.971. He noted that all of the messages had "one common characteristic": they included a banner that stated "Paid for by WinRed" and "Powered by WinRed." *Id.* He argued that Defendants violated the TCPA by sending and/or causing the text messages to be sent.

WinRed, Inc. is a political action committee registered with the Federal Election Commission while WinRed Technical Services, LLC is a technology vendor and payment processor that has a website which "allows right-of-center political candidates and committees to create custom landing pages for processing donations from supporters." ECF No. 42, PageID.638.

The parties disputed WinRed's role in sending text messages. Defendants argued that WinRed does not send text messages to solicit money on behalf of a campaign, nor does it provide telemarketing services, or allow campaigns to send text messages through its platform. ECF No. 42, PageID.639. Rather, according to Defendants, WinRed is simply a "back end" payment processor. *Id.* But Dobronski argued that Defendants "built the proverbial better mousetrap for political fundraising" that "facilitates political candidates to send their message . . . by use of SMS text messaging technology" that can "pump[] out tens of thousands of SMS text messages each hour on behalf of its several thousand clients." ECF No. 44, PageID.969–970. And because he was the recipient of eight-two of those messages

2

from various candidates "powered by" WinRed, Dobronski sued Defendants for violating the TCPA.

In the claim that survived Defendants' motion to dismiss, Plaintiff alleged that Defendants sent him text messages by use of an automatic telephone dialing system in violation of 47 U.S.C. § 227(b) and 47 C.F.R. § 64.1200(a)(1)(iii). ECF No. 1, PageID.17–20. After discovery ended, Defendants moved to compel Dobronski to produce documents regarding his telephone records and political donation history. ECF No. 40. Shortly thereafter, Defendants moved for summary judgment on the remaining claim and argued that neither WinRed nor any of its agents sent the text messages to Dobronski and that there was no evidence that WinRed used an Automatic Telephone Dialing System. ECF No. 42. Dobronski opposed the motion and argued that WinRed was so involved in the text messages under a totality-of-the-circumstances test that it was liable under the TCPA. ECF No. 44.

## LEGAL STANDARD

The Court must grant a summary judgment motion "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A moving party must point to specific portions of the record that "it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets its burden, the non-moving party may not simply rest on the pleadings but must present "specific facts showing that there is a genuine issue for

3

trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis omitted) (quoting Fed. R. Civ. P. 56(e)).

A fact is material if proof of that fact would establish or refute an essential element of the cause of action or defense. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). A dispute over material facts is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When considering a summary judgment motion, the Court must view the facts and draw all reasonable inferences "in the light most favorable to the non-moving party." *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987) (citations omitted).

## DISCUSSION

The Telephone Consumer Protection Act (TCPA) makes it unlawful for

> any person within the United States . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system . . . to any telephone number assigned to a . . . cellular telephone service.

47 U.S.C. § 227(b)(1)(A)(iii). The regulations promulgated under 47 U.S.C. § 227(b) also prohibit telephone calls made using an automatic telephone dialing system (ATDS). 47 C.F.R. § 64.1200(a)(1)(iii). And a text message to a cellular telephone qualifies as a "call" under § 227(b)(1)(A)(iii). *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016). The term "automatic telephone dialing system" means "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C.

4

§ 227(a)(1). The statutory scheme creates a private right of action for liquidated damages in the amount of $500.00 per violation, or actual monetary loss, whichever is greater. 47 U.S.C. § 227(b)(3)(B). Finally, a plaintiff can recover damages under the TCPA under a theory of direct or vicarious liability. *Keating v. Peterson's Nelnet, LLC,* 615 F. App'x 365, 371 (6th Cir. 2015).

As an initial matter, Defendants argued that summary judgment "at a minimum" should be granted for forty-seven out of the eighty-two text messages because Dobronski only produced evidence that thirty-five text messages from WinRed existed. ECF No. 42, PageID.645. Dobronski did not address Defendants' argument in his response. *See generally* ECF No. 44. Although he maintained that he received eighty-two messages, he cited only the allegations in his complaint rather than record evidence. *Id.* at PageID.971. That is insufficient. *T.E. v. Anthem Blue Cross & Blue Shield,* 165 F.4th 971, 987 (2026) ("[A]t summary judgment, a plaintiff cannot rest on allegations. He must instead identify evidence in the record to substantiate each claim in the complaint." (citation modified)). The Court agrees that only some of the messages alleged in the complaint are present in the record. *See* ECF No. 42-3, PageID.737, 740; ECF No. 42-4, PageID.747–749; ECF No. 42-16, PageID.824–825.

As to the messages in the record that Plaintiff received, the principal issue is not whether the messages violated the TCPA, but rather who sent the messages Plaintiff received. The Court therefore must determine if there is a genuine dispute

of material facts as to whether Defendants—either directly or through an agent—sent the messages in the record.

Defendants' principal argument in its moving brief was that it did not send the text messages to Dobronski and that there is no evidence in the record to create a dispute of material fact on the issue. ECF No. 42, PageID.645–647. They also argued that they could not be vicariously liable for the texts at issue. *Id.* at PageID.651–656. But in response, Dobronski argued that the FCC "no longer relies exclusively on the requirement of a formal agency relationship" to determine whether a provider initiated the calls. ECF No. 44, PageID.974. Instead, he argued that that a "totality of the circumstances" test is the proper inquiry for making the determination. *Id.* at PageID.975.

Dobronski did not address Defendants' potential liability based on a direct liability theory. *Id.* at PageID.974. Because Plaintiff did not address direct liability, the Court will not consider whether Defendants are directly liable. *See Eid v. Wayne State Univ*, 599 F. Supp 3d 513, 540 (E.D. Mich. 2022) (explaining that when the plaintiff did not address Defendants' argument he "effectively conceded the issue" (collecting cases)).

Next, the parties disagree about the correct test to apply for vicarious liability. Dobronski set forth no facts, however, that would satisfy either theory. Plaintiff cited *Lucas v. Telemarketer Calling From (407) 476-5680*, No. 18-3633, 2019 WL 13545379, at *4 (6th Cir. Nov. 1, 2019), an unpublished Sixth Circuit opinion, that stated:

> The FCC no longer relies exclusively on the requirement of a formal agency relationship in determining whether the platform provider is so

involved in placing the calls as to be deemed to have initiated them, and instead has adopted a totality of the circumstances test for making that determination. The FCC directed courts to consider (a) the extent to which a person willfully enables fraudulent spoofing of telephone numbers or assists telemarketers in blocking Caller ID, by offering either functionality to clients and (b) whether a person who offers a calling platform service for the use of others has knowingly allowed its client(s) to use that platform for unlawful purposes.

(citation modified). Since then, according to Dobronski, the correct test to apply to determine vicarious liability for TCPA claims is a looser "totality of the circumstances" test.

But many courts in the Sixth Circuit, including this one, continue to apply traditional agency principles to determine liability under the TCPA. *See, e.g.*, *Dobronski v. Selectquote Ins. Servs.*, No. 2:23-cv-12597, 2025 WL 904370 (E.D. Mich. Jan. 14, 2025) (Murphy, J.), *vacated in part on reconsideration*, 784 F. Supp. 3d 976 (E.D. Mich. 2025); *Hensley v. Dimension Serv. Corp.*, No. 5:24-cv-378, 2025 WL 1679841 (E.D. Ky. June 13, 2025) (citing *Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 371 (6th Cir. 2015)); *see also Dobronski v. NPS, Inc.*, No. 356617, 2022 WL 1194212 (Mich. Ct. App. Apr. 21, 2022).

To be sure, in another case in the district involving Dobronski, the court recognized the *Lucas* test and noted that "traditional agency theories are not exclusively used to determine various liability." *Dobronski v. Tobias & Assocs.*, 769 F. Supp. 3d 681, 698 n.9 (E.D. Mich. 2025) (Levy, J.). Judge Levy, however, declined to apply the totality of the circumstances test from *Lucas* because none of the defendants were "platform providers." *Id.* (*citing In Re Rules & Regulations*, 30 F.C.C.R. at 7979). *Lucas*, which relied on a declaratory ruling and order by the

7

Federal Communications Commission (FCC), *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 F.C.C.R. 7961 (2015), applied to "calling platform service[s]." 2019 WL 13545379, at *4. Some other courts suggest that the totality-of-the-circumstances test is the correct course. *See also Dobronski v. Ins. Supermarket Inc.*, No. 23-10149, 2025 WL 3121332, at *4 (E.D. Mich. Aug. 1, 2025) (Ivy, M.J.) ("A 'formal' agency relationship is not required to find vicarious liability. . . . Instead, we look to the totality of the circumstances . . . .") (citing *Lucas*, 2019 WL 13545379).

The Court will not follow the *Lucas* test here. The FCC and Sixth Circuit specified that the test applies to calling "platform providers." *Lucas*, 2019 WL 13545379, at *4. And, as Defendants noted, there is no evidence that WinRed offers a calling platform service; it only provides a payment platform. ECF No. 46, PageID.1028; *see also* ECF No. 42-1, PageID.672; ECF No. 42-5, PageID.752. The *Lucas* test is thus inapplicable. *Accord Dobronski v. Tobias & Assocs.*, 769 F. Supp. 3d 681, 698 n.9 (E.D. Mich. 2025) (Levy, J.) (declining to apply totality-of-the-circumstances test because none of the defendants were "platform providers").[2]

---

[2] Even if the Court were to apply the totality-of-the-circumstances test, Defendants would still be entitled to summary judgment. Dobronski's principal argument seems to be that "WinRed purposefully avoids learning of the illegal conduct" by campaigns, and therefore "engages in deliberate indifference." ECF No. 44, PageID.977. Again, the only record evidence Dobronski pointed to was the deposition testimony of WinRed's CEO. There is no evidence set forth by Plaintiff that WinRed knowingly allowed its clients to use their platform for unlawful calls or text messages. As the Court notes below, WinRed's terms explicitly require campaigns who link to the Platform to "do so in a way that is fair and legal." ECF No. 42-12, PageID.792. Accordingly, for many of the same reasons that the campaigns are not agents of

The Court will therefore proceed to determine whether Defendants may be held vicariously liable according to traditional principles of agency. Resolving all inferences in favor of Plaintiff, Defendants are entitled to summary judgment: there is no evidence that Defendants were involved with, let alone principals of, those who sent Dobronski text messages.

A caller is liable only for calls that it initiates and calls initiated by its agents. *See Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 168 (2016) (explaining in dicta that the Court had no reason to question the Ninth Circuit's view that "under federal common-law principles of agency, there is vicarious liability for TCPA violations"); *Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 372 (6th Cir. 2015) (discussing vicarious liability for TCPA violations).

Under general principles of agency, a principal is liable for its agent's acts only when the agent acts with actual or apparent authority or when the principal ratifies the agent's acts. *Thomas v. Taco Bell Corp.*, 582 F. App'x 678, 679 (9th Cir. 2014); *Jonna v. Latinum*, 617 F. Supp. 3d 758, 771–72, 774 (E.D. Mich. 2022); *see also Dobronski v. NPS, Inc.*, No. 356617, 2022 WL 1194212, at *4–6 (Mich. Ct. App. Apr. 21, 2022) (concluding that Dobronski failed to create genuine fact disputes on agency liability). The Court will address actual authority, apparent authority, and ratification in turn.

---

WinRed and that WinRed did not ratify the campaigns' conduct, WinRed may also not be held liable using Plaintiff's preferred totality-of-the-circumstances test.

Here, Dobronski did not point to any record evidence that Defendants gave any third-party actual authority to send the text messages at issue here. Like *Selectquote* and *NPS*, WinRed's terms of service with political campaigns and donors using the WinRed Platform explicitly forbade them from making illegal calls and only allow campaigns to link to the Platform "provided you do so in a way that is fair and legal." ECF No. 42-12, PageID.792; *see also id.* at PageID.792 (explaining that "no partnership is formed and neither you nor [WinRed] has the power or the authority to obligate or bind the other"); ECF No. 42-3, PageID.730 (Plaintiff admitting that there is no evidence that WinRed contracts with any third-party telemarketer).

What is more, Dobronski did not point to any evidence in the record suggesting any manifestation of assent from Defendants to the campaigns or other third parties. *See* Restatement (Third) of Agency § 4.01, cmt. d (2006) ("[T]he principal's manifestation of assent to the agent is essential to the presence of actual authority, and the principal's manifestation to the third party is essential to the presence of apparent authority.") (citation modified). Dobronski did not provide evidence that Defendants authorized a campaign to act as its agent or send out illegal messages on their behalf.

Next, the undisputed facts demonstrate that Defendants did not ratify any of the messengers' allegedly illegal texts here. "A principal can ratify an act by '(a) manifesting assent that the act shall affect the person's legal relations, or (b) conduct that justifies a reasonable assumption that the person so consents.'" *NPS*, No. 356617, 2022 WL 1194212, at *5 (quoting 1 *Restatement Agency*, 3d, § 4.01(1)).

Dispositive here is that, at the summary judgment stage, a ratification theory would require at least a dispute of fact as to whether Defendants knew or should have known about the allegedly illegal text messages and manifested assent. And "[n]othing in the record before this court gives any indication that the defendants authorized a third party to conduct a text-messaging campaign" and especially not one that violated the law. *See Keating*, 615 F. App'x at 374–75.

For any theory, the only evidence Dobronski pointed to was testimony from WinRed's CEO. He used a few lines from the deposition testimony to argue that "the uncontroverted evidence is that WinRed is well aware that its clients use the WinRed platform for unlawful purposes, but WinRed does *nothing* to stop the unlawful use." ECF No. 44, PageID.975. But the testimony does not support Dobronski's proposition. Rather, Lyk merely testified that he was not aware of any campaign or committee violating the TCPA and if he was, he would "review with [] legal counsel." ECF No. 42-2, PageID.699. The rest of Dobronski's argument on vicarious liability is tethered to his own speculation about WinRed's operations. That is not sufficient to survive summary judgment. *See Matsushita*, 475 U.S. at 587 (explaining that the non-moving party may not simply rest on the pleadings but must present "specific facts showing that there is a genuine issue for trial") (quoting Fed. R. Civ. P. 56(e)); *see also Betkerur v. Aultman Hosp. Ass'n*, 78 F.3d 1079, 1087 (6th Cir. 1996) (explaining that a court is under no obligation to search the record for genuine issues of material fact). Because Dobronski did not put forward any other evidence that Defendants assented to

11

conduct that violated the TCPA, WinRed cannot be held liable for the alleged illegal messages pursuant to a ratification theory.

## CONCLUSION

Because the Court found that there is no dispute of material fact as to whether Defendants sent the texts at issue or caused them to be sent, and because they had no agency relationship to those that did, Defendants cannot be held liable for a violation of the TCPA. And because Defendants did not "make any call," it need not consider whether an ATDS was used. *See* 47 U.S.C. § 227(b)(1)(A). Last, the Court need not consider the evidence at issue in the motion to compel to resolve summary judgment motion. It will therefore deny Defendants' motion to compel as moot.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that Defendants' motion for summary judgment [42] is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' motion to compel [40] is **DENIED AS MOOT**.

This is a final order that closes the case.

**SO ORDERED.**

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: July 28, 2026

12